Cooke, J.
 

 There are currently three routes by which an
 
 *98
 
 individual or agency can terminate a parent’s right to a child, thus placing that child in a position whereby he or she will be available for adoption. One such route, the most direct, is via a proceeding pursuant to article VII of the Domestic Relations Law. Such proceeding is brought by the individual who wishes to adopt. It accomplishes both the termination of parental rights and the adoption.
 

 The second route is by way of a guardianship proceeding under the Social Services Law. Section 384 of the Social Services Law permits an authorized agency to petition for the guardianship and custody of a child under circumstances which include abandonment of the child by the parent for a period of at least six months. When guardianship is granted, the agency, not the parent, is the proper party to consent to an eventual adoption of the child.
 

 Finally, there is the permanent neglect proceeding of article 6 of the Family Court Act. While the Social Services Law is applicable to situations where a child has been "abandoned or deserted * * * left * * * without being visited or having payments made toward his support, for a period of at least six months by his parent, guardian or other lawful custodian without good reason” (Social Services Law, § 371, subd 2, par [c]), the permanent neglect proceeding was designed to be instituted in situations where parental conduct falls short of abandonment (see Gordon, Terminal Placements of Children and Permanent Termination of Parental Rights: The New York Permanent Neglect Statute, 46 St John’s L Rev 215). A permanently neglected child is, by statute, defined as "a person under eighteen years of age who is in the care of an authorized agency, either in an institution or in a foster home, and whose parent or custodian has failed for a period of more than one year * * * substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the moral and temporal welfare of the child” (Family Ct Act, § 611).
 

 Entering the courts by way of the second route, St. Christopher’s Home instituted a guardianship proceeding pursuant to subdivision 6 of section 384 of the Social Services Law, alleging the abandonment of Richard H. by his natural mother. Richard, born out of wedlock on April 30, 1969, was left with
 
 *99
 
 an acquaintance of his mother shortly after birth and was, within a few weeks, turned over to the Bureau of Child Welfare of the Department of Social Services for the purposes of foster care. While testimony as to those circumstances differed, there is no dispute that Richard, at the age of five weeks, was received into the home of Judith Longobardi, appellant, where he has remained for what is now seven years. Approximately three and a half years after his arrival in the Longobardi home, Richard’s foster care status was reviewed by the Family Court pursuant to section 392 of the Social Services Law. The results of that review were a direction by the Family Court Judge to the agency to initiate proceedings to terminate the natural mother’s rights, thus freeing Richard for adoption.
 

 On December 12, 1973, St. Christopher’s Home petitioned for guardianship, alleging the requisite six-month abandonment by Richard’s mother. At trial, the agency gave testimony to the effect that it was unable to locate Richard’s mother, correspondence addressed to her having been returned by the post office marked "addressee unknown”. There was, however, proof that the agency had the addresses of Richard’s maternal grandfather and aunt but made no attempt to have either assist in efforts to reach Richard’s mother. Having failed to employ these relatives in its search for Richard’s mother, who as it now appears had moved to Florida within a year of Richard’s birth, the Surrogate found the agency had failed to use diligent efforts to encourage and strengthen the parental relationship as required by sections 611 and 614 of the Family Court Act and, thus, failed to sustain its burden of proving abandonment. The Appellate Division, applying the same standard, affirmed.
 

 The question raised here is whether, in a proceeding predicated upon abandonment under section 384 of the Social Services Law, it must be shown that the agency used diligent efforts to encourage and strengthen the parental relationship, a requirement written into sections 611 and 614 of the Family Court Act but not appearing in the Social Services Law. A review of the origins of the two types of proceedings, as well as an analysis of the statutory provisions of each, compel an answer in the negative.
 

 At the outset and prior to historical analysis, it should be noted that while a question of first impression in this court, this is not the first instance in which the relationship between
 
 *100
 
 these provisions of the Social Services Law and the Family Court Act has been considered. In
 
 Matter of Ellick
 
 (69 Misc 2d 175), the Family Court addressed itself to the procedural due process question which arose in the application of section 384 of the Social Services Law and held that a proceeding brought under said section must follow the procedural provisions set forth in article 6 of the Family Court Act. This question does not arise and will not be considered on this appeal. In
 
 Matter of Jennifer "S",
 
 (69 Misc 2d 942, 949), however, the Surrogate raised a question similar to the one herein and contemplated, without deciding, that due process "may require all courts to construe the language of both statutes together, so that the infant’s best interests are truly served.” In the subsequent opinion of the same title
 
 (Matter of Jennifer "S",
 
 69 Misc 2d 951, 954-955), the Surrogate responded to the question raised earlier by stating that a reading of the "diligent efforts” requirement of the Family Court Act into the definition of an abandoned child in the Social Services Law "is necessary to afford parents substantive due process”. However, once having articulated the incorporation, the Surrogate then eliminated the requirement from both sections by holding that the failure of the agency to comply with the requirement could not preclude a finding of abandonment under section 384 or of permanent neglect under article 6. Certainly, the need for reconciliation of these statutory provisions continued (see Ellison & Occhialino, Family Law, 24 Syracuse L Rev 513, 541).
 

 The origin of the guardianship and custody proceeding can be traced to chapter 438 of the Laws of 1884. Even then parental rights were subject to termination, guardianship and custody to be assumed by an agency upon a finding of abandonment. Such a finding required a showing of acts so unequivocal as to bear one interpretation and one only, that the parents manifested an intention to abandon their child forever
 
 (Matter of Bistany,
 
 239 NY 19, 24) or, as it was phrased in
 
 Matter of Maxwell
 
 (4 NY2d 429, 433), "a settled purpose to be rid of all parental obligations and to forego all parental rights”, no lesser showing being sufficient. Such a heavy burden was deemed appropriate "since the right of a parent, under natural law, to establish a home and bring up children is a fundamental one and beyond the reach of any court”
 
 (People ex rel. Portnoy v Strasser,
 
 303 NY 539, 542;
 
 Meyer v Nebraska,
 
 262 US 390, 399).
 

 
 *101
 
 Adoption, unknown to the common law, exists solely by statute
 
 (Betz v Horr, 276
 
 NY 83, 86-87;
 
 Matter of Thorne,
 
 155 NY 140, 143). The first general statutory provision covering adoption was chapter 830 of the Laws of 1873. Then, as now, parental consent was necessary with few exceptions, one among them being abandonment (L 1873, ch 830, § 11; Domestic Relations Law, § 111, subd 4).
 

 In 1959 the Legislature recognized the existence of a serious * situation which had resulted from the stringent test set for the finding of abandonment. This situation was compounded by the necessity for such a finding of abandonment, absent parental consent, in the adoption process. In the memorandum of the Citizen’s Committee for Children of New York City, Inc., which was incorporated into the Legislature’s report, it was noted that section 384 of the Social Services Law (formerly entitled Social Welfare Law) in providing for the termination of parental rights "makes no provision for the vastly greater number of children who, though not 'abandoned’ in the legal sense, have been abandoned in every other sense and are doomed to live in foster homes or institutions because the natural parents are unwilling to provide them with a family life even though able to do so and even though given every assistance by social agencies. Recent studies disclose that there are thousands of children in foster homes or institutions where they have been placed by their natural parents or by orders of the children’s courts, who grow up with only the barest of contact with their natural parents. Tragically, such contacts while so infrequent or superficial as to be meaningless to the child, are a bar to a judicial finding of 'abandonment’. Consequently, although many of these children could be adopted if the legal rights of the natural parents were terminated, they are, as a practical matter, unadoptable, and continue in custodial care at the cost of blighted lives and at great public expense” (NY Legis Ann, 1959, pp 208-209). (See, also, Gordon,
 
 op. cit.,
 
 46 St John’s L Rev 215; see, generally, Termination of Parental Rights, 32 NYU L Rev 579.)
 

 In an attempt to remedy this situation, what has now become article 6 of the Family Court Act, the "permanent neglect statute”, was passed (L 1959, chs 449, 450). Concurrently, section 111 of the Domestic Relations Law was amended (L 1959, ch 448) to remove the necessity for parental consent to an adoption in situations where a guardian for the
 
 *102
 
 child has been appointed under section 384 of the Social Services Law or where there has been a judicial finding that the child has been permanently neglected. Thus, both section 384 of the Social Services Law and article 6 of the Family Court Act were intended to serve as separate and distinct means of terminating parental rights with the choice of proceeding dependent upon the circumstances of the case and each to serve as a sufficient basis for the elimination of the requirement of parental consent in subsequent adoption proceedings.
 

 Two recent legislative amendments reinforce the conclusion that the Legislature continues to view these statutes as separate paths to a similar end. The first such amendment reduced the requisite period of abandonment referred to in the Social Services Law from one year to six months (L 1969, ch 640) with no similar reduction of the one-year time period in the "permanent neglect statute”.
 

 The second, more recent amendment, added similar clauses to section 111 of the Domestic Relations Law, section 384 of the Social Services Law and section 611 of the Family Court Act, each to the effect that evidence of insubstantial and infrequent contacts by a parent with his or her child shall not of itself be sufficient as a matter of law to preclude a finding that such parent has abandoned such child or that such child is permanently neglected (L 1975, ch 704, eff Aug. 9, 1975). This amendment supports the view that, when the Legislature intends to add a requirement or caveat, it will specifically so do and, that by reading the diligent efforts requirement of article 6 into section 384, the courts trespass upon legislative territory. Under the doctrine of separation of powers, courts may not legislate
 
 (Bright Homes v Wright,
 
 8 NY2d 157, 162;
 
 Matter of Metropolitan Life Ins. Co. v Boland,
 
 281 NY 357, 361), or rewrite
 
 (Matter of Chase Nat. Bank v Guardian Realties,
 
 283 NY 350, 360;
 
 Matter of Tormey v La Guardia,
 
 278 NY 450, 451), or extend legislation
 
 (People ex rel. Newman v Foster,
 
 297 NY 27, 31;
 
 Matter of Hogan v Supreme Ct.,
 
 281 NY 572, 576). If due diligence is to be a requirement of section 384, that is a matter for the Legislature, the courts having no right to expand statutory terms
 
 (Matter of Malpica-Orsini,
 
 36 NY2d 568, 571, app dsmd 423 US 1042.
 

 Section 384 of the Social Services Law and article 6 of the Family Court Act were intended to offer alternative and independent means of terminating parental rights. Each was
 
 *103
 
 drafted to meet a particular situation. Each reflects an attempt to balance the rights of the parents against those of the child, with the best interests of the child remaining of paramount concern. While the burden of proving abandonment has traditionally been a heavy one, it is not to be made heavier by an additional requirement not present in the statute. The degree of neglect should determine the route chosen to free the child and, if an agency can prove abandonment, i.e., prove that the parent failed to visit or support the child for six months without good reason, it is not also required to prove diligent efforts to encourage and strengthen the parental relationship.
 

 The order of the Appellate Division should be reversed and the case remitted to the Surrogate’s Court for further proceedings in accordance with this opinion.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order reversed, without costs, and matter remitted to the Surrogate’s Court, Nassau County, for further proceedings in accordance with the opinion herein.