In the Matter of LOUIS F.

First Department, October 21, 1976

*Gerald Goldfeder* of counsel *(Peter Samberg* with him on the brief; *Robbins & Goldfeder,* attorneys), for appellants.

*David H. Berman* of counsel *(Bodell & Magovern, P. C.,* attorneys), for Catholic Home Bureau, respondent.

*Robert Schnapp* for natural mother, respondent.

LUPIANO, J. This is a proceeding initiated by foster parents pursuant to section 392 of the Social Services Law to review the foster care status of the child Louis F. wherein they seek an order directing the authorized agency to institute a proceeding to legally free such child for adoption, and upon a failure by such agency to institute such a proceeding, permitting them to institute such a proceeding. The Department of Social Services of the City of New York seeks to continue the child in foster care in that the agency is working toward a plan of discharge to the natural mother in the immediate future, but that it is contrary to the child's best interest to return him at this time. The foster parents moved for prehearing disclosure of certain records of the respondents relating to the child and his natural (biologic) parents which motion was denied by the Family Court with the brief and only observation that "[t]here is no sufficient showing of necessity to permit such disclosure."

Succinctly stated, the information sought by the foster parents is as follows: (1) all entries relating to visits between the infant and each of his natural parents, including entries relevant to reactions to such visits on the part of the foster parents, (2) all entries relating to plans of the natural parents to remove the child from placement and efforts by the agency to strengthen the relationship between the child and the natural parents, (3) all entries relating to home environment and the attitudes of the natural parents, (4) all entries relating to any history of mental illness, drug use, alcoholism, child neglect, child misconduct, criminal activity and contagious illness of either natural parent, (5) the names, addresses and birth dates of the natural parents, (6) all entries relevant to the child's present state of health and medical history, and (7) all entries relating to the facts surrounding the placement of the infant by the natural parents. Opposition to disclosure voiced by the respondents Department of Social Services and

Catholic Home Bureau, and by the natural mother may be summarized as follows: there is no showing of necessity for access to this vast amount of material in that much of it is irrelevant or privileged; one of the foster parents was present during the foster child's visitation with his natural mother; the co-operation by the natural mother with the authorized agency was developed and exists under the aegis of confidentiality and to disclose such material would be injurious to the relationship between said mother and the social worker with consequent hampering of the agency's work; the foster parents are engaged in a full-scale fishing expedition; the request for disclosure of plans by the agency and natural mother to strengthen the parental relationship should be denied as the instant proceeding is designed to evaluate the *current* situation and is not a permanent neglect proceeding, and the health of the infant is known to the foster parents. The predicate urged by the foster parents for access to the information sought is advice by a caseworker that the natural mother has suffered psychological difficulties which prevent her from regaining custody and is living with a man not her husband, and the absence of knowledge on the foster parents' part as to the biologic parents.

In *Matter of Carla L.* (45 AD2d 375), the issue of confidentiality of an authorized agency's case record warranted the procedural safeguard of *in camera* inspection by the Family Court. It was noted that (pp 386-387) "section 372 of the Social Services Law specifically enumerates a natural parent as among those to whom disclosure may be afforded. Although not so enumerated in section 372 of the Social Services Law, a foster parent is given status as a party in a section 392 foster care review proceeding and, as already stated, it is section 392 which serves as the fountainhead for the rights of the parties within a foster care review proceeding. Consequently, an opportunity should be afforded a foster parent to obtain disclosure when appropriate in a foster care review proceeding. However, the different relationships inherent in the foster parent and natural parent require a different procedural method wherein and whereby such disclosure may be obtained by a foster parent. Recognition of these relationships and the absence of a foster parent from the designated classes to whom disclosure may be afforded in section 372 of the Social Services Law mandate the conclusion that such disclosure may be had only upon a proper showing, of necessity, coupled

with *in camera* viewing by the Family Court. Initial disclosure by way of stipulation may be had, but only where court approval is obtained. Thus, the Family Court is of necessity involved *ab initio* with the disclosure process when disclosure is sought by a foster parent."

Enumerated as interested parties in a foster care review proceeding are the natural parents, the foster parents and the authorized agency (Social Services Law, § 392, subd 2). In balancing these respective interests, the court is guided by what is "in accordance with the best interest of the child" (Social Services Law, § 392, subd 7). Circumstances may present themselves where the showing of necessity demonstrated is so weak that *in camera* viewing is not needed. However, as a general proposition, *in camera* viewing complements the requirement of a proper showing of necessity. The best interest of the child is the transcendent principle, and *in camera* viewing under appropriate circumstances may generate a somewhat weak showing of necessity into a compelling showing.

Under the circumstances herein, with due regard for the positions taken by each of the interested parties and observing the paramount goal of the best interest of the child, it is clear that as to certain information sought by the foster parents, to wit, that embraced in items (1), (5) and (6) delineated above, except as to the medical history of the child, a proper showing of necessity was not demonstrated. However, as to the remaining items, it was patently necessary for the Family Court to view the material *in camera* so as to properly discharge its duty within the ambit of *Matter of Carla L. (supra).* The order appealed from does not disclose whether such *in camera* viewing occurred. Although both the natural mother and the Catholic Home Bureau in their brief state that such inspection by the Family Court occurred, the foster parents in their brief assert that the Family Court declined to read the case records of the authorized agencies *in camera*. This assertion was withdrawn by counsel for the foster parents in a subsequent letter advising that he had been informed by the Family Court Judge that such inspection was held. In any event, this court requested production of the records sought by the foster parents and furnished to the Family Court for *in camera* inspection. This request having been complied with, the court was enabled to render an informed appellate deter-

mination and concludes that the discretion of the Family Court was not abused in denying the application.

In conclusion, due regard for proper procedure mandates that where *in camera* inspection was had, the holding of such inspection be noted in the record.

The order, Family Court, New York County (OTTEN, J.), entered June 3, 1976, denying a motion by the foster parents for prehearing disclosure of certain records of respondents Catholic Home Bureau and the New York City Department of Social Services, should be affirmed without costs and disbursements.

KUPFERMAN, J.P. (concurring). I concur in the result on constraint of the determination of this court (3:2) in *Matter of Carla L.* (45 AD2d 375). It is my opinion, as set forth in that case at page 387, that the Social Services Law (§ 384, subd 3) grants foster parents who have had custody for more than 24 months, as is the case here, the right to obtain disclosure in this proceeding.

As the Court of Appeals recently stated, per BREITEL, Ch. J., in *Matter of Bennett v Jeffreys* (40 NY2d 543, 552, n 2): "Third-party custodians acquire 'rights'—really the opportunity to be heard—only derivatively by virtue of the child's best interests being considered, a consideration which arises only after, as the cases have always held, the parent's rights and responsibilities have been displaced."

It is, of course, the best interest of the child that concerns us. (See *LoPresti v LoPresti,* 40 NY2d 522, 525.) Where it is alleged, as here, that this child, born out of wedlock, was placed in the foster care of the petitioners when he was 23 days old, through respondent Catholic Home Bureau, and where it is further alleged that the natural mother has taken no interest in the child (see *Matter of Orlando F.,* 40 NY2d 103) and has a history of mental illness, and that the authorized child care agency, the Catholic Home Bureau, is arranging to return the child to the natural mother in the immediate future, the foster parents ought to have the right to see the records as to the mother's history with respect to the child. (See "Increase Seen in Foster Parents' Rights" by Joseph R. Carrieri, NYLJ, Aug. 24, 1976, p 1, col 2, p 4, col 1.) (Cf. *Singleton v Wulff,* 428 US 106.)

That they seek this information in an attempt to free the

child for adoption pursuant to section 611 of the Family Court Act (see *Matter of Anonymous [St. Christopher's]*, 40 NY2d 96, 98) is a proper predicate for disclosure of the information, and this early attempt at a resolution of the problem prior to the possibility of the agency returning the child to the natural mother, gives the court the opportunity to assist in arriving at a solution in order to avoid the type of delay, which this court suggested should be avoided (see *Matter of Carla L.*, 45 AD2d 375, 387).

As was said by the Court of Appeals in its memorandum opinion in *Matter of Gomez v Lozado* (40 NY2d 839, 840): "The best interest of the child, therefore, would seem to require a greater exploration than has already been done."

CAPOZZOLI, LANE and NUNEZ, JJ., concur with LUPIANO, J.; KUPFERMAN, J.P., concurs in an opinion.

Order, Family Court of the State of New York, New York County entered on June 3, 1976, unanimously affirmed, without costs and without disbursements.