W. Denis Donovan, J.
The Deputy Commissioner of Social Services seeks an order of this court pursuant to section 384 of the Social Services Law committing guardianship of the person and custody of Amy S. to the commissioner and empowering the commissioner to place Amy for adoption. The respondent has not sought custody of the subject child nor objected to continued foster care placement. Amy was born in 1967 and has continuously resided with her foster parents since early 1968. Preliminary proceedings were conducted on this petition on April 29, 1975 and the matter came on to be heard on July *43 29, 1975. Based upon numerous delays a mistrial was declared by the court (Buell, J.) on January 21, 1976.
The matter again came on to be heard on February 10, 1976 at which time the respondent requested new assigned counsel, and respondent’s motion was granted.
The matter then again came on to be heard on March 16, 1976 at which time the hearing was adjourned at the request of respondent’s attorney with the consent of all parties.
The matter then again came on to be heard on May 7, 1976 at which time counsel mutually indicated a reluctance to again undertake a plenary hearing and set before the court a stipulation of facts on the basis of which it was urged jointly by all participating counsel that the court could properly make a determination concerning the appropriate action to be taken on the pending petition. Additional time was extended to counsel for the submission of briefs.
The Law Guardian for the child, by papers submitted to the court on October 26, 1976 has among other things, made application for additional testimony to be taken as to the relationship of the subject child and her foster parents inflight of the recent decision by the Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543).
In his surreply memorandum dated November 11, 1976, counsel for respondent opposes this application on the ground that: "Bennett supports the respondent’s contention that the best interests of the child are not relevant until a finding of abandonment is made.”
While this matter has been sub judice, the Court of Appeals has given careful attention in a number of decisions to the applicable statutory law under which the parental rights of a natural parent may be terminated.
In Matter of Anonymous (St. Christopher’s Home) (40 NY2d 96, 98) the court reviewed the three routes by which an individual or agency can seek to terminate a parent’s right to a child, including the history of these procedures as they now exist under article VII of the Domestic Relations Law, section 384 of the Social Services Law and article 6 of the Family Court Act. The court points out that the permanent neglect proceeding under section 384 of the Social Services Law was designed to be instituted in situations where parental conduct falls short of abandonment. Among other things, the court concluded in Matter of Anonymous (St. Christopher’s Home) *44 that the showing of diligent efforts required of the petitioning agency under article 6 of the Family Court Act does not apply as part of the burden of proof required of the agency in a proceeding brought by it under section 384 of the Social Services Law.
In their briefs, counsel for petitioner and respondent have addressed themselves in some detail to this issue. This question was resolved by the holding of the Court of Appeals in Matter of Anonymous (St. Christopher’s Home) (supra) and accordingly, this court finds that there was no burden on the part of the Department of Social Services to prove diligent efforts on its part to encourage and strengthen the parental relationship.
The court finds the following issues to be relevant in taking appropriate action in this proceeding as it now stands. First, whether the record before this court establishes by a fair preponderance of the evidence that the subject child is an abandoned child within the appropriate statutory definition set forth in subdivision 2 of section 371 of the Social Services Law. The statute reads as follows: "2. 'Abandoned child’ means a child who is abandoned or deserted in any place by both parents, or by the parent having its custody, or by any other person or persons lawfully charged with its care or custody, and left * * * (c) without being visited or having payments made toward his support, for a period of at least six months, by his parent, guardian or other lawful custodian without good reason”. (Emphasis added.)
The second issue properly before this court is at what phase in the fact-finding sequence, if at all, the court is to pass upon the best interests of the child in making a fact-finding determination on the petition.
The attorney for the respondent natural mother has argued that "the Court may not use the 'best interest of the child’ test as a basis for terminating parental rights.”, citing as the basis for this position the following statement by the Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543, 549, supra): "To recapitulate: intervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child.” (Emphasis added.)
*45 The allegations of paragraphs 1 through 9 of the petition are, in the opinion of this court, sufficiently broad to enable this court to determine not only whether Amy is an abandoned child, but also whether intervention by the State is warranted on the ground that there has been "an unfortunate or involuntary extended disruption of custody” so that the welfare of the child stands on a footing different from the presumed norm wherein children are deemed to derive the greatest benefit from being raised by their own parents or parent. Amy was born in 1967 and has been living with her present foster parents since early 1968. This is not a matter in which pleadings are to be strictly construed, and this court feels obliged to examine all of the bases under which parental rights may be terminated pursuant to section 384 of the Social Services Law.
It is noted in passing that this court is fully mindful of the argument of opponents of "extraordinary circumstances” as a ground for termination of parental rights. In essence, that argument is that a "Pandora’s Box” would be opened by allowing a "no-fault” criterion to be used as a basis, because it might allow social service agencies to do indirectly what they cannot do directly. By prolonging separation of parent and child and thereby effectuating the passage of time based upon their own subjective determinations, it is argued, this ground would enable social service agencies themselves to in effect determine who is ultimately to have custody of the child. This argument is not devoid of merit. The delay occasioned by the judicial process itself, which this case serves to illustrate, is equally subject to criticism in this regard.
Counsel has also made reference to prior case law wherein it was held that even where "the flame of parental interest is reduced to a flicker the courts may not properly intervene to dissolve the parentage” (citing Matter of Susan W. v Talbot G., 34 NY2d 76, 80). By virtue of the holding of the Court of Appeals in Matter of Anonymous (St. Christopher’s Home) (40 NY2d 96, supra) which cites the 1975 legislative amendment of subdivision 6 of section 384 (L 1975 ch 704, eff Aug. 9, 1975) the "flicker of interest” rule no longer governs.
As noted by the court in Matter of Anonymous (St. Christopher’s Home) (supra, p 102): "evidence of insubstantial and infrequent contacts by a parent with his or her child shall not of itself be sufficient as a matter of law to preclude a finding *46 that such parent has abandoned such child, or that the child is permanently neglected”.
This court must now with considerable regret address itself to the unfortunate state of the record before it. What is before this court is a stipulation entered into by counsel for the parties, not including the Law Guardian for the child, in which said attorneys sought to reflect by agreement the evidence adduced during the earlier mistrial.
With regard to the nature, texture and the quality of evidence, and the manner of deliberation in proceedings of this nature, the Court of Appeals had occasion to make the following observation (Matter of Orlando F., 40 NY2d 103, 111-112): "Indeed, each factual pattern would undoubtedly reveal peculiarities of its own but particular facts and the totality of circumstances must be scrutinized and weighed carefully in rendering decisions in such delicate human affairs”.
In the aforesaid stipulation petitioner and respondent were willing to make following proposed finding available to the court: "20 There has been an established pattern of a breakdown in communications between the Department of Social Services and Mrs. S. One result of this has been an exacerbation of the problems involved in trying to foster a familial relationship between Amy and her mother. The fault can be laid both at the feet of the Department of Social Services as well as Mrs. S.”
This damning concession by the Department of Social Services arrests the attention of the court and provides a strong argument to those who oppose "no-fault” termination of parental rights. In any event, this court cannot in good conscience be bound by a set of agreed facts arrived at by negotiation between counsel, not including the Law Guardian for the child, when "rendering decisions in such delicate human affairs.”
Accordingly, this court finds as a matter of law that the record before it is insufficient to support a proper determination.
The court must now address itself to the next procedural step to be taken in a proceeding that has already been referred to by respondent’s counsel as a "procedural nightmare.” A dismissal of the petition would only serve to occasion further delay and would not be in the interests of justice. What is here referred to as procedure is not procedure in the *47 mere sense that it determines the manner of passing upon substantive issues, for in this instance the implications of procedure are heavily laden with the urgent need to vindicate a child’s rights and provide a graphic example of what is sometimes referred to as "substantive due process.”
In no other area of the law does the passage of time have so palpable and tangible an effect on what is generally referred to as the "merits” of a case in the sense that it may play a direct part in effecting the ultimate determination by the court.
As herein before noted, counsel for the respondent mother has argued in his memorandum of law that the best interests of the child should not be employed as the standard when parental rights are sought to be terminated. The contention is rejected. In Matter of Bennett v Jeffreys (40 NY2d 543, 544, 546-547, supra) decided by the Court of Appeals on September 21, 1976 the court said the following:
"The State may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances. If any extraordinary circumstances are present, the disposition of custody is influenced or controlled by what is in the best interests of the child. In the instant case, extraordinary circumstances, namely, the prolonged separation of mother and child for most of the child’s life, require inquiry into the best interest of the child. [Emphasis added.] * * *
"The day is long past in this State, if it had ever been, when the right of a parent to the custody of his or her child, where the extraordinary circumstances are present, would be enforced inexorably, contrary to the best interest of the child, on the theory solely of an absolute legal right. Instead, in the extraordinary circumstance, when there is a conflict, the best interest of the child has always been regarded as superior to the right of parental custody. Indeed, analysis of the cases reveals a shifting of emphasis rather than a remaking of substance. This shifting reflects more the modern principle that a child is a person, and not a subperson over whom the parent has an absolute possessory interest. A child has rights too, some of which are of a constitutional magnitude (cf. Goss v Lopez, 419 US 565, 574; Matter of Winship, 397 US 358, 365; Tinker v Des Moines School Dist., 393 US 503, 506; Matter of Gault, 387 US 1, 47).
"Earlier cases, such as People ex rel. Kropp v Shepsky (305 *48 NY 465, 468-469) and People ex rel. Portnoy v Strasser (303 NY 539, 542), emphasized the right of the parent, superior to all others, to the care and custody of the child. This right could be dissolved only by abandonment, surrender, or unfitness. Of course, even in these earlier cases, it was recognized that the parental custody is lost or denied not as a moral sanction for parental failure, but because 'the child’s welfare compels awarding its custody to the nonparent’ (People ex rel. Kropp v Shepsky, 305 NY 465, 469, supra). ”
In Matter of Anonymous (St. Christopher’s Home) (40 NY2d 96, 101, supra) the court stated in detail the three procedures available for termination of parental rights, the rationale underlying these procedures, and perhaps, most importantly, a judicial philosophy for approaching matters which gives coherence and clarity to the statutory scheme. Particularly noteworthy is this statement by the court: "In 1959 the Legislature recognized the existence of a serious situation which had resulted from the stringent test set for the finding of abandonment. This situation was compounded by the necessity for a finding of abandonment, absent parental consent, in the adoption process. In the memorandum of the Citizen’s Committee for Children of New York City, Inc., which was incorporated into the Legislature’s report, it was noted that section 384 of the Social Services Law (formerly entitled Social Welfare Law) in providing for the termination of parental rights 'makes no provision for the vastly greater number of children who, though not "abandoned” in the legal sense, have been abandoned in every other sense and are doomed to live in foster homes or institutions because the natural parents are unwilling to provide them with a family life even though able to do so and even though given every assistance by social agencies. Recent studies disclose that there are thousands of children in foster homes or institutions where they have been placed by their natural parents or by orders of the children’s courts, who grow up with only the barest of contact with their natural parents. Tragically, such contacts while so infrequent or superficial as to be meaningless to the child, are a bar to a judicial finding of "abandonment”. Consequently, although many of these children could be adopted if the legal rights of the natural parents were terminated, they are, as a practical matter, unadaptable, and continue in custodial care at the cost of blighted lives and at great public expense’ (NY Legis Ann, 1959, pp 208-209). (See, also, Gordon, op. cit., 46 St. *49 John’s L Rev 215; see, generally, Termination of Parental Rights, 32 NYU L Rev 579.)”
Additionally, the Court of Appeals in Matter of Orlando F. (40 NY2d 103, 111, supra) made the following observations: "State Senator Joseph R. Pisani, Chairman of the Temporary State Commission on Child Welfare, in support of the aforementioned 1973 amendment, wrote: '[E]yen when there is substantial and continuous visitation, the parent or custodian may fail to take steps to end the foster care status of the child and restore the child to a homelife with the parent or custodian. A child is no less in limbo when kept in foster care year after year when the parent or custodian is physically and financially able to provide a home but fails to do so.’ (NY Legis Ann, 1973, p 35.) Such is the case here. The child has remained with the foster parents virtually since birth and they have expressed a desire to adopt. When the natural parent fails to accept the parental role, even though the result of shortcomings for which he or she may not be fully responsible, the ’best interests’ of the child, the pivotal consideration underlying all of these proceedings, dictates that the right to custody be terminated. ” (Emphasis added.)
Based upon these premises, it appears to this court that the Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543, supra) may have added a new and independent basis for termination of parental rights by its definition of "extraordinary circumstances.” It now appears to this court that under the criteria enunciated in Matter of Bennett v Jeffreys prolonged separation of the natural parent and child, particularly a separation which commences in early childhood, mandates a consideration of the best interests of the child. Such consideration of the best interests of the child may then be found to require sustaining the psychological parentage which has formed between the child and the foster parents by freeing the child for adoption by such foster parents. By inference, therefore, the requirement of finding omission to act without good reason contained in section 371 (subd 2; par [c]) may be rendered inoperative. The Court of Appeals sets forth its rationale for this suggested conclusion as follows (Matter of Bennett v Jeffreys, 40 NY2d 543, 546-547, supra): "Of course, even in these earlier cases, it was recognized that parental custody is lost or denied not as a moral sanction for parental failure, but because 'the child’s welfare compels awarding its custody to the nonparent.’ ”
*50 Additionally, the Court of Appeals goes on to note (p 549): "The child’s best interest is not controlled by whether the natural parent or nonparent would make a 'better’ parent, or by whether the parent or the nonparent would afford the child a 'better’ background or superior creature comforts. Nor is the child’s best interest controlled alone by comparing the depth of love and affection between the child and those who vie for its custody. Instead, in ascertaining the child’s best interest, the court is guided by principles which reflect a 'considered social judgment in this society respecting the family and parenthood’ (Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 204, supra). These principles do not, however, dictate that the child’s custody be routinely awarded to the natural parent (see Matter of Benitez v Llano, 39 NY2d 758, 759).”
Finally, in Bennett, the Court of Appeals held that the custody of the subject child might properly be awarded to the foster mother, conditioned however, upon further fact finding by the trial court to determine to the fullest possible certitude that the best interests of the child warranted the award of custody to the foster mother.
In short it may well be the present state of the law that termination of the parental rights of the natural mother may in the proper circumstance solely be a sequel of a finding that it is in the best interests of the child to remain within the psychological parentage in which the child developed, with the termination of the natural mother’s rights requiring no independent basis of fact finding. This is a path fraught with danger, for in some instances it could make delay self-serving. There are those who would suggest that this very case may well be an example of it.
In light of all of the recent developments herein before discussed, the Law Guardian of the subject child now moves for additional fact finding. The court agrees and is guided by the following statement made in Bennett (40 NY2d 543, 555, supra, concurring opn, Fuchsberg, J.): "Nevertheless, since painstaking fact finding is so far superior to presumptions and assumptions, and, therefore, should be encouraged, I join in the decision to remit this case for further information-gathering.”
In view of the profound changes which appear to have been read into the law by the Court of Appeals in Bennett, and the other cases discussed, this court finds that further fact finding *51 is required in keeping with the criteria set forth in those cases.
It is noted with some regret that the Court of Appeals has not more fully addressed itself to tempering the mechanisms of delay. If parental rights are to be terminated based upon the criteria enunciated, this court believes that a balance should be maintained by also strengthening the residual rights of the child to have knowledge of, and contact with, his natural parents, upon his own volition.
All prior proceedings herein are hereby vacated and the clerk of the court is directed to set this proceeding down for plenary hearing. Such hearing shall be granted a trial preference, and the date thereof shall be peremptory against all parties and counsel.
Counsel are requested to employ the necessary effort for the "painstaking fact finding” required to determine the issues properly to be considered by this court as herein before set forth.
Additionally, the clerk of the court is directed to serve a copy of this decision upon counsel for the foster parents.
This court will entertain an application by the foster parents, if it is made to be joined as parties to the fact-finding proceeding.