OPINION OF THE COURT
Elrich A. Eastman, J.
In this proceeding for approval of a surrender instrument, a motion has been made by the unwed father asking the court *249 to determine the impact of the decision in Caban v Mohammed (441 US 380) upon the rights of this unwed father and the constitutionality of section 384 (subd 1, par [c]) and subdivision 3 of section 384-c of the Social Services Law in the aftermath of that ruling.
A review of the origins of this matter will, indeed, be helpful in disposing of this motion. Originally, these three children were placed with the Commissioner of Social Services (Docket Nos. N2863-5/75) by dispositional order dated March 9, 1976, as a result of a neglect finding against the respondent mother. No finding was made against this unwed father, although he appeared in the action. Thereafter, the respondent mother executed a voluntary surrender instrument dated September 3, 1976, committing the guardianship and custody of the three children to the Commissioner of Social Services and the Catholic Home Agency. Pursuant to section 392 of the Social Services Law, foster care review was commenced on January 25, 1978.
Meanwhile, termination proceedings were commenced against both the respondent mother and this unwed father on April 12, 1978. By order of disposition, dated June 28, 1978 (Docket Nos. K5591-3/77), the foster care review proceedings were consolidated with the termination proceedings for disposition. Subsequently, petitioner moved to serve an amended petition to delete the cause of action for permanent neglect against the unwed father and to remove him as a party respondent and to proceed solely against the respondent mother for approval of the surrender instrument, allowing the unwed father to appear as a nonparty intervenor at the dispositional hearing and to present evidence on the issue of the best interests of the children (Social Services Law, § 384-c, subd 3). On its own motion, the court raised the issue of a putative father’s[1] standing as a party respondent in a permanent neglect proceeding.
During the pendency of the afore-mentioned proceedings, the unwed father made an application for a stay of this court’s decision pending the outcome of Caban v Mohammed (supra), which was sub judice. The stay was denied and the Family Court issued its decision on February 14, 1979, granting the motion to amend the petition and to delete the unwed father as a party respondent. The court also ruled, inter alia, that if *250 a petition for approval of the respondent mother’s voluntary surrender instrument replaces a permanent neglect petition that the putative father’s removal as a party respondent will not prejudice the rights of the putative father. This finding was premised on the court’s belief that all issues relating to the putative father’s rights could be litigated by his timely intervention in the surrender approval proceeding as a non-party intervenor. Thereupon, the unwed father moved the court to: ■ (1) declare section 384 (subd 1, par [c]) of the Social Services Law, subdivision 3 of section 384-c of the Social Services Law and section 111 (subd 1, par [c]) of the Domestic Relations Law[2] unconstitutional; (2) dismiss the petition for failure to state a cause of action; (3) alternatively, to allow respondent unwed father to intervene as a party respondent; and (4) declare that the amended petition cannot be granted without either the consent of the unwed father or a finding that he has permanently neglected his children.
Concurrently, on April 11, 1979, a writ of habeas corpus against the Commissioner of Social Services was obtained by the unwed father in the Supreme Court, New York County. This writ was referred to the Family Court and joined with this proceeding for determination. As further ancillary relief, the unwed father moved by notice of motion for orders of filiation as to the subject children. This motion was later withdrawn by the unwed father upon discovery that such filiation orders had been entered April 1, 1974.
In view of the order of placement and the consolidation of these proceedings heretofore set forth, the writ of habeas corpus is denied since all related issues are determinable in the termination proceeding.
The first issue for determination is the effect of Caban v Mohammed (supra), upon the rights of an unwed father in termination proceedings. A careful reading of the Caban decision leads clearly to the conclusion that the United States Supreme Court has categorically destroyed the sex-oriented base for consent of unwed mothers in adoption proceedings. (Domestic Relations Law, § 111, subd 1, par [c].) In so doing, the United States Supreme Court declared (Caban v Mohammed, 441 US 380, 382, supra): "We find the statute to be unconstitutional, as the distinction it invariably makes be *251 tween the rights of unmarried mothers and the rights of unmarried fathers has not been shown to be substantially related to an important state interest.” Again, the court stated (p 391): "We find that the distinction in § 111 between unmarried mothers and unmarried fathers * * * does not bear a substantial relation to the State’s interest in providing adoptive homes for its illegitimate children.” Thus, the court declared constitutionally suspect the gender-based statutory distinction of section 111 (subd 1, par [c]) of the Domestic Relations Law as unrelated to legitimate governmental objectives. This suspect classification does not emanate from the facts of Caban and the limited class of affected fathers, but from the statute itself, which encompasses in its sweep both the limited class of fathers with substantial relationships with their out-of-wedlock children and those with little or no contact. The breadth of the statutory distinction under section 111 (subd 1, par [c]) of the Domestic Relations Law disqualifies an unwed father solely on the basis of his sex, even after the entry of an order of filiation and notwithstanding a clearly established relationship with his child(ren).
Moreover, the Caban court rejected the contention of the appellees that consent is a mere formality and that the true test in adoption proceedings is the "best interests of the child.” Rejecting appellee’s interpretation of section 111 (subd 1, par [c]) of the Domestic Relations Law as unsupported by New York case law, the court noted (p —, pp 1765-1766) that: "On the contrary, the New York Court of Appeals has stated unequivocally that the question whether consent is required is entirely separate from that of the best interests of the child” (n 5, quoting Matter of Corey L v Martin L, 45 NY2d 383 omitted).
The argument of petitioner that Quilloin v Walcott (434 US 246) is controlling here because of the similarity of facts loses force upon analysis of the rationale of that decision. There, the court ruled upon the constitutionality of the Georgia consent to adoption statute which distinguished fathers according to their marital status. However, as the Caban court points out (p 389), in Quilloin they expressly reserved the question whether the Georgia statute unconstitutionally distinguished unwed parents according to gender, since this issue was not properly presented. Thus, by implication, the court would have declared the statute unconstitutional if the issue had been the gender-based classification. Significantly, the *252 ruling in Quilloin has not been disturbed by Caban because of Quilloin’s posture so that both cases continue to coexist harmoniously.
Therefore, this court believes that the holding of the Caban case mandates that an unwed father be made a party to the termination of parental rights proceedings, as he now has a right to consent to the adoption of his out-of-wedlock offspring. Accordingly, his parental rights must be terminated under section 384-b of the Social Services Law. As a result, he becomes a necessary party to the termination proceeding and must be served therein.
Petitioner is directed to further amend its petition within 15 days of the date of this order to allege a cause of action for termination of the unwed father’s parental rights pursuant to section 384-b of the Social Services Law and to reinstate him as a party respondent to the termination proceedings.
Based upon the foregoing analysis, this court need not pass upon this unwed father’s constitutional challenge to section 384 (subd 1, par [c]) and subdivision 3 of section 384-c of the Social Services Law. Indeed, they are moot as to him by virtue of his status as a party respondent enabling him to appear and to present evidence at the fact-finding hearing on the termination of his parental rights and at the dispositional hearing, if a finding is made.
The motion is granted to the extent set forth above. Respondents in cross petitions may litigate issues relating to termination of placement and custody of these children.

. At the time these parties were before Judge Meyer, it had not been discovered that orders of filiation had been entered.

. Respondent’s request was sought prior to the Caban decision which declared section 111 (subd 1, par [c]) of the Domestic Relations Law unconstitutional.