In the Matter of RICKY R. MITCHELL, an Infant, by MARJORE WHITE, His Guardian and Parent, Appellant. ONONDAGA DEPARTMENT OF SOCIAL SERVICES, Respondent.

Fourth Department, November 2, 1979

**APPEARANCES OF COUNSEL**

*Blitman & King (Charles Blitman* of counsel), for appellant.

*James H. Hughes (Nancy Jones* of counsel), for respondent.

*Benjamin M. Gingold, Law Guardian.*

**OPINION OF THE COURT**

CALLAHAN, J.

This matter originated when petitioner Ricky Ralph Mitchell sought, by an order and petition, a writ of habeas corpus requiring Sharon Brandon, her parents, and the respondent Onondaga Department of Social Services, to show cause why Ricky Brandon, an infant born (March 14, 1974) out of wedlock to petitioner and Sharon Brandon, and thereafter surrendered by his mother to the Onondaga County Department of Social Services for adoption, should not be released and placed in petitioner's custody. The order temporarily stayed any adoption proceedings. Simultaneously, petitioner initiated a paternity petition in the Onondaga County Family Court alleging himself to be the father of the child, Ricky Brandon. Supreme Court referred the habeas corpus proceeding to the Onondaga Family Court. Respondent's motion to dismiss both petitions for lack of jurisdiction was granted by the Family Court without a hearing and petitioner appealed. In *Matter of Ricky M. v Sharon B.* (49 AD2d 1035) we reversed and remitted the matter to the Onondaga Family Court for a hearing on the habeas corpus petition.

Upon remittitur, Family Court bifurcated the habeas corpus proceedings (1) to establish petitioner's paternity and, if that were established, (2) for a custody hearing. After a hearing on the paternity issue, it was determined (June, 1976) that petitioner was the father of the child, Ricky Brandon and, as such, a proper party to pursue a habeas corpus action in the child's behalf. The finding of paternity has not been appealed. Following the custody hearing (April 1, 1977), the court rendered a decision denying the habeas corpus petition and ordering that adoption proceedings of the infant, Ricky Brandon, be facilitated in the best interests of the child. It is that judgment (denominated decision and order) of the Onondaga Family Court which we have for review.

Family Court found that Ricky Mitchell, then 19 years of age, resides with his mother and stepfather, five brothers and sisters, is partially dependent on them for his support, and has not seen the child, Ricky Brandon, since his birth; that his employment record has been sporadic and, while currently employed on a part-time basis, his present job has an uncertain future. The court acknowledged that his mother and

stepfather are well-educated and well-respected members of the community; that his immediate plans include the possibility of going to a two-year college with the financial assistance of a Federal grant. In considering these factors and weighing their ramifications and probable effects on the best interests of Ricky Brandon, the court concluded that Ricky Mitchell is not qualified to raise his three-year-old child in an environment which would promote proper emotional, physical and mental growth. The court found that the petitioner himself was still dependent upon his parents for his sustenance and being uncertain about his future could not properly give a child the same quality care that he himself receives. Thus, after careful thought and consideration, the court determined that the best interests of the infant would be served if the adoption proceeding were allowed to proceed.

Family Court founded its decision in part (1) upon section 111 (subd 1, par [c]) of the Domestic Relations Law providing that only the natural mother's consent is required for adoption of a child born out of wedlock and section 384 (subd 1, par [c]) of the Social Services Law which requires only an unwed mother to execute a surrender certificate to an authorized agency; (2) on *Matter of Malpica-Orsini* (36 NY2d 568, app dsmd *sub nom. Orsini v Blasi,* 423 US 1042), holding that the consent of a father of an out-of-wedlock child is not required prior to placing the child for adoption unless such father has custody of the child at the time of the petition for adoption. In view of the aforesaid statutes and the holding in *Malpica-Orsini (supra),* the determination of the Family Court may well have been proper at the time it was rendered. We must decide this case, however, on the basis of the law as it exists at the time of judicial review (see *Strauss v University of State of N. Y.,* 2 NY2d 464).

Adoption is a matter governed by statute *(Betz v Horr,* 276 NY 83; *Matter of Thorne,* 155 NY 140). Section 111 of the Domestic Relations Law was amended to facilitate adoption proceedings of illegitimate children. While the intent of the statute was designed to foster and enhance adoption of illegitimate children, it did necessarily result in a deprivation of the rights of fathers. The New York State Legislature, in response to the United States Supreme Court decision in *Stanley v Illinois* (405 US 645) and in recognition of the fact that the father of an out-of-wedlock child has a substantial and cognizable interest in the custody of his child, enacted section 111-a

of the Domestic Relations Law (L 1976, ch 665), effective January 1, 1977. The statute provides an unwed father with notice of a pending adoption and an opportunity to be heard prior to a decision terminating his parental rights. Following *Stanley v Illinois (supra,* 1972), there has been substantial concern regarding the rights of unwed fathers in adoption proceedings. While the Court of Appeals did not overrule *Malpica-Orsini (supra),* the caveat stated in *Matter of Corey L v Martin L* (45 NY2d 383, 386-387) that "Despite recent changes in statutory law, there remains a heavy burden of constitutional magnitude on one who would terminate the rights of a natural parent through adoption" should not have been ignored.

Recently the Supreme Court in *Caban v Mohammed* (441 US 380) overruled its decision in *Orsini v Blasi (supra)* and declared section 111 (subd 1, par [c]) of the Domestic Relations Law unconstitutional as violating the equal protection clause. The effect of the classification upon the New York statute was to discriminate against unwed fathers even when their identity was established and they manifested a significant paternal interest in the child. That section effectively excluded some fathers from participating in the decision whether their child should be adopted. "[T]his undifferentiated distinction between unwed mothers and unwed fathers, applicable in all circumstances where adoption of a child of theirs is at issue," stated the court, "does not bare a substantial relationship to the State's asserted interests." *(Caban v Mohammed, supra,* p 394.) Hence an unwed father is now accorded equality to an unwed mother within the purview of the law. We can no longer consider a father of an illegitimate child an unnecessary party to an adoption proceeding.

There has always been an abiding respect for the rights of natural parents *(People ex rel. Kropp v Shepsky,* 305 NY 465). A natural parent has a right to the care and custody of his child superior to all others and this right can be dissolved only by abandonment, surrender or unfitness *(People ex rel. Kropp v Shepsky, supra; People ex rel. Portnoy v Strasser,* 303 NY 539, 542). Furthermore, the natural father of an illegitimate child possesses this right no less than the father of a child born in wedlock *(Raysor v Gabbey,* 57 AD2d 437).

Termination of parental status and rights must be

viewed as intrinsically more serious than custody awards of infants away from parents. Since the issue is the termination of a natural parent's right to his child and not merely one of visitation or custody, the consent of the natural father, or proof of an abandonment, is a prerequisite to the judicial termination of his parental relationship (see *Matter of Anonymous [St. Christopher's Home],* 40 NY2d 96). Absent consent, the court should thoroughly investigate and explore the issue of abandonment, since neither decisional rule nor statute can bring the relationship to an end because someone else might rear the child in a more satisfactory fashion *(Matter of Bennett v Jeffreys,* 40 NY2d 543). Abandonment, as it pertains to adoption, relates to such conduct on the part of a parent as evinces a purposeful ridding of parental obligation and the foregoing of parental rights—a withholding of interest, presence, affection, care and support. The best interests of the child as such are not an ingredient of that conduct and are not involved in this threshold question *(Matter of Corey L v Martin L, supra).* While promotion of the best interests of the child is essential to the ultimate approval of the adoption application, such interests cannot act as a substitute for a finding of abandonment.

Where the issue is the right of a natural parent to custody of his child, it is established that a parent cannot be replaced because someone else could do a better job of raising the child; rather, only when "extraordinary circumstances" such as abandonment, unfitness or persistent neglect are found, "the court must then make the disposition that is in the best interests of the child" *(Matter of Bennett v Jeffreys, supra,* p 548; *Raysor v Gabbey, supra).* If, for purposes of determining mere custody, the best interests of the child would not permit a parent to be displaced in the absence of extraordinary circumstances, surely a complete termination of obligations and rights is not to be allowed in a situation where, as here, abandonment has not been established, even if an ensuing adoption might be viewed by some to be in the best interests of the child *(Matter of Corey L v Martin L, supra).*

Upon our review of the record in this case, it is clear that petitioner has not surrendered the child, Ricky Brandon, nor is there a finding of abandonment, persistent neglect or unfitness. Absent such a finding the court may not permanently sever all parental ties *(Matter of Sanjivini K., 47 NY2d 374).* Respondent's proof does not establish that petitioner should be

disqualified from custody because of his conduct, and the court did not find that he was. The finding that, "[T]he child has been in a foster home with two loving parents for over three years. To remove the child now from such an environment where he is accustomed to stability, care and love, and to place him with the petitioner, who has provided this court with no formidable plan for the child's proper growth and care, would be detrimental to the child's emotional and mental well-being," is not supported in the record. The record is completely devoid of any evidence as to where the child is presently located other than in a foster or preadoptive home. It is apparent that the court made no finding that the natural father was unfit nor is there a finding of abandonment. The court bases its decision solely on the best interests of the child and that the child would be better raised in a two-parent home than by an unwed individual.

Within two months of Ricky Brandon's birth petitioner made application for custody of the child. Five years have transpired since this involuntary separation of father and child without resolution of his application. We must express our strong disapproval of this inordinate delay. Such inaction, for whatever reason, is inexcusable. Surely this is not in the best interests of the infant.

Two and one-half years have elapsed since the hearing and decision of Family Court herein and we do not have before us current information or reports to indicate the present status and intent of the parties necessary to make a proper determination upon abandonment (see *Matter of Goldman,* 41 NY2d 894). Accordingly, the judgment must be reversed and the matter remitted to Family Court, Onondaga County, for an immediate hearing and decision in accordance with the existing law. The record herein should be supplemented to include appropriate independent social investigation, interviews and reports, and petitioner should not be precluded from presenting all relative and material proof from witnesses on his behalf.

The judgment should be reversed and the matter should be remitted for a hearing to Onondaga Family Court in accordance with this opinion.

DILLON, P. J., CARDAMONE, SIMONS and WITMER, JJ., concur.

Judgment unanimously reversed, without costs, and matter

remitted to Onondaga County Family Court for further proceedings in accordance with opinion by CALLAHAN, J.