OPINION OF THE COURT
Edward J. McLaughlin, J.
In this proceeding for a final order of adoption, the court holds that when the natural father of an out-of-wedlock child has established no relationship with the mother of the child, or with the child, and thus is not entitled to notice under statutory or case law, and, when the natural mother of the child abandons the child, in this case by surrendering the child to an authorized agency, the United States Supreme Court decision of Caban v Mohammed (441 US 380) does not apply, and there is no need for the agency to procure the consent of the child’s biological father.
FACTS
On October 6, 1978, a 17-year-old high school student gave birth to an out-of-wedlock female child, the subject of this proceeding. On November 3, 1978, the child’s natural mother voluntarily surrendered the child to Catholic Charities of the Roman Catholic Diocese of Syracuse, New York, Inc., an authorized agency. (Social Services Law, § 371, subd 10.) The child’s maternal grandmother executed a notarized document indicating that she ratified and approved of the action of her daughter. The child was placed in an adoptive home on or about November 11, 1978. A final order of adoption is now sought.
Prior to the birth of the child, Catholic Charities worked with the mother of the child. The mother consistently expressed a desire to surrender the child. She informed the agency that the child had been conceived when she was living out-of-State. Since the father did not fall within any of the categories of fathers entitled to notice before a voluntary surrender document could be executed (Social Services Law, *544 § 384-c),[1] the agency never contacted the father, and, to the best knowledge of the agency, he was never made aware of the mother’s pregnancy and, thus, was not aware of the birth of the child. The mother herself did not see her daughter after she delivered her. The adoptive parents now seek the court’s approval of a final order of adoption, since the child was surrendered to the agency by the mother and the mother’s consent to the adoption is no longer required. (Domestic Relations Law, § 111, subd 1, par [d].) The issue which the court must determine is whether the consent of the natural father of the child must now be obtained before the adoption can be approved by the court.
THE LAW
PRIOR PROCEDURE
Prior to April 24, 1979, judicial approval of an agency adoption was granted as a routine matter after the appearance before the court of the child and the adoptive parents. (Domestic Relations Law, § 112.) In April of 1979, however, the United States Supreme Court in the case of Caban v Mohammed (441 US 380, supra) cast a cloud over the question of what consents were needed prior to the approval of an adoption by declaring section 111 of the New York Domestic Relations Law unconstitutional. The portion of the section that the court rejected (Domestic Relations Law, § 111, subd 1, *545 par [c]) concerned a gender-based distinction in that it required consent to an adoption by the mother of a child born out-of-wedlock but it did not require the consent of the father of such a child before the adoption could be approved by the court. In Caban (supra), the father of the children lived with the mother of the children for five years. During this time the couple represented themselves as husband and wife. Also, during this period two children were born to the couple, and Caban was identified as the father of the children on their birth certificates. He lived with the children until their mother left him to live with another man, taking the children with her. He then regularly visited the children and contributed to their support. Thus, under New York law he fell into one of the categories of out-of-wedlock fathers entitled to notice of a proposed surrender to an authorized agency under the Social Services Law (Social Services Law, § 384-c), or of an adoption proceeding under the Domestic Relations Law. (Domestic Relations Law, § 111-a.)
THE RIGHTS OF FATHERS
The natural father of an out-of-wedlock child has inchoate rights which may ripen into rights which are closely analogous to those rights which are enjoyed by the father of a child married to the child’s mother,[2] or those enjoyed by the unmarried mother (see p 546 infra), provided that he takes certain responsibilities and performs certain duties to affirm his fatherhood. In those cases in which the United States Supreme Court has upheld the out-of-wedlock father’s claims, the father has attempted to maintain as close a relationship to his child as has the unmarried mother of the child. (Parham v Hughes, 441 US 347; Caban v Mohammed, 441 US 380, supra; Stanley v Illinois, 405 US 645.) On the other hand, an unmarried father who asserted his "rights” after many years of not assuming any of the responsibilities of fatherhood was thwarted in his attempt to block an adoption by the natural mother of the child and her husband. (Quilloin v Walcott, 434 US 246.) Mr. Justice Marshall, writing for the majority, stated (p 256): "Although appellant was subject, for the years prior to these proceedings, to essentially the same child-support obligation as a married father would have had * * * he has never exercised actual or legal custody over his child, and *546 thus has never shouldered any significant responsibility with respect to the daily supervision, education, protection, or care of the child.”
That the United States Supreme Court is aware of the distinctions between fathers of out-of-wedlock children is further amplified by the adoption by the court of the language of a New York Surrogate’s opinion: "The putative father often goes his way unconscious of the birth of a child. Even if conscious, he is very often totally unconcerned because of the absence of any ties to the mother. Indeed the mother may not know who is responsible for her pregnancy.” (Emphasis in the original; Matter of Oritz, 60 Misc 2d 756, 761, quoted in Lalli v Lalli, 439 US 259, 269; see Parham v Hughes, 441 US 347, supra; cf. Trimble v Gordon, 430 US 762, 770.)
The rights of a natural father clearly are not absolute. (See Matter of Mitchell, 70 AD2d 367.) If a father fails to perform his parental duties, his inchoate rights of fatherhood never ripen. He does not acquire rights merely because of his biological function, as does a father married to the mother.
THE RIGHTS OF THE MOTHER
"At common law it was generally recognized that the right to custody of an illegitimate child was in its mother.” (51 ALR2d 498.) In New York the child born out of wedlock has long been considered "the lawful child of its mother”. (1 Schatkin, Disputed Paternity Proceedings [4th ed rev] § 1.10.) Further it has long been the rule in New York that "the mother has the right to the custody of an illegitimate child as against the father, though the father has the right to the custody as against a stranger.” (People ex rel. Meredith v Meredith, 272 App Div 79, 82, citing 2 Kents’ Comm [4th ed] 317; Matter of Doyle, 1 Clarke Ch 154; People ex rel. Trainer v Cooper, 8 How Prac 288-293; see, also, Robalina v Armstrong, 15 Barb 247; People v Landt, 2 Johns 375; Carpenter v Whitman, 15 Johns 208; People ex rel. Davenport v Kling, 6 Barb 366; 7 Am Jur, Bastards, §§61-63.) Thus the natural mother of a child has long been recognized as having a legal relationship with the child, which is based upon her biological function.
CONSENT TO ADOPTION IN NEW YORK PRIOR TO CABAN
Adoption was unknown at the common law and is purely a *547 statutory matter. Thus, "the answer to the question of what consents [to an adoption] are needed must be found in particular statutory provisions.” (51 ALR2d 498.) Section 111 of the Domestic Relations Law sets forth the consents to an adoption that were required under New York law. The consents required were those of:
"(a) * * * the adoptive child, if over fourteen years of age unless the judge or surrogate in his discretion dispenses with such consent;
"(b) * * * the parents or surviving parent, whether adult or infant, of a child born in wedlock;
"(c) * * * the mother, whether adult or infant, of a child born out of wedlock;
"(d) * * * any person or authorized agency having lawful custody of the adoptive child.” (Domestic Relations Law, § 111, subd 1, pars [a]-[d].)
This is the section of the law which was declared unconstitutional in Caban v Mohammed (441 US 380, supra), although the language of the dissent in Caban indicates that the constitutional infirmities of the statute are to be found only in paragraph (c) of subdivision 1. (441 US 380, 394 [Mr. Justice Stewart dissenting]; 441 US 380, 401 [Mr. Justice Stevens, Chief Justice Burger, and Mr. Justice Rehnquist dissenting].)
In the instant case an authorized agency, Catholic Charities, is attempting to give its consent to this adoption pursuant to the provisions of section 111 (subd 1, par [d]) of the Domestic Relations Law. The court must, therefore, examine the procedure through which the authorized agency secured the guardianship and cústody of the subject child. There are primarily two means by which an authorized agency obtains such guardianship — surrender by the mother pursuant to statutory law and common-law abandonment.
SURRENDER
Under the authority of section 384 of the Social Services Law an authorized agency may obtain the guardianship of the person and custody of destitute or dependent children in a variety of ways. A written surrender may be made by the following categories of persons:
"(a) if both parents shall then be living, by the parents of such child, or by the surviving parent, if either parent of such child be dead;
*548 "(b) if either one of such parents shall have for a period of six months then next preceeding abandoned such child, by the other of such parent;
"(c) if such child is born out of wedlock, by the mother of such child;
"(d) if both parents of such child are dead, or if such child is born out of wedlock and the mother of such child is dead by the guardian of the person of such child lawfully appointed, with the approval of the court or officer which appointed such guardian to be entered of record.” (Social Services Law, § 384, subd 1, pars [a]-[d].)
If a man has established a relationship with the mother of the out-of-wedlock child or with the child, he is entitled to notice of the surrender. (Social Services Law, § 384-c.)
In the case at bar at the time of the surrender by the natural mother of the subject child, the rights of the natural father remained inchoate. The fact that he was unaware of the pregnancy or the birth does not alter the status of the natural father. Moreover, since rights are created by the people, either by means of constitutional amendment or legislative action, courts may not create rights which do not exist through the consent of the people. (See Caban v Mohammed, 441 US 380, 392, n 13, supra.) "[T]he court may not substitute itself for the Legislature merely because the Legislature has failed to act.” (Matter of Spillane v Katz, 25 NY2d 34, 37.) "Nor”, as Judge Learned Hand taught us, "is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant.” (Spector Motor Serv. v Walsh, 139 F2d 809, 823, vacated 323 US 101 [L. Hand dissenting]; accord United States v General Douglas MacArthur Senior Vil., 470 F2d 675, 680, cert den sub nom. Nassau County v United States, 412 US 922, on remand 366 F Supp 302, affd 508 F2d 377.)
Whether the father of an out-of-wedlock child should have his rights come into being at the moment of quick birth of the child, as does the father of a child who is married to the child’s natural mother, is a decision that must be left to the people speaking through the Legislature. This court does not speak on the issue.
ABANDONMENT
Abandonment is a legal concept which is characterized *549 differently in different legal situations. (Matter of Dickson v Lascaris, 97 Misc 2d 610.) The act of the mother in surrendering her child in the instant case is not unlike a ministerial act of abandonment. Her act expressed in a formal way her unqualified intention to terminate her parental rights in the child. Said in another way, the natural mother of the child by not seeing the child after its birth and by arranging to surrender the child to an authorized agency for purposes of adoption, intentionally extinguished the last flicker of interest she had in the child and has, under the common law, abandoned the child. (Matter of Susan W. v Talbot G., 34 NY2d 76.)
Having abandoned the child, which the mother could have done by a physical act rather than by surrendering the child to an authorized agency, the consent of the mother to the adoption is no longer required. This is so not because of the applicability or existence of section 111 of the Domestic Relations Law, for whether that section of the law was in existence or not, it is the policy of this State that abandoned children be placed as promptly as possible in preadoptive homes, so that they may become integral parts of an adoptive home, and avoid the tragedy of long-term foster care. (Social Services Law, § 384-b, subd 1, par [a], els [i], [ii], [iii], [iv]; § 384-b, subd 1, par [b].) Section 111 of the Domestic Relations Law not being applicable here, the decision of the United States Supreme Court in the Caban decision may be distinguished. (Matter of Blendina S., NYLJ, Oct. 22, 1979, p 13, col 2.)
Under the common law the father of a child born out of wedlock would have no rights in this action. Thus the father’s rights, if any, must arise either from the State or Federal Constitution or by statute. Looking to the New York statutes it may be seen that the father of an out-of-wedlock child who has established a relationship with his child and/or the child’s mother is entitled to notice of an action which arises pursuant to sections 384, 358-a and 384-b of the Social Services Law. (Social Services Law, § 384-c.) In the instant case the father is not entitled to notice, since he does not fit into any of the statutory categories set forth by the Legislature. (Social Services Law, § 384-c.) Nor has the father here established a relationship with the mother of the child that would require that he receive notice under New York case law. (Matter of Malipica-Orsini, 36 NY2d 568, app dsmd sub nom. Orsini v Blasi, 423 US 1042.) This court would be exceeding its author *550 ity were it to create a new category of persons entitled to notice.
Courts are, however, extremely reluctant to deprive a person of a right of which the person has no notice. (See Miranda v Arizona, 384 US 436; Escobedo v Illinois, 378 US 478.) This is especially true where, as here, it is the State itself that is going to take action. Since an adoption may only be consummated pursuant to statute, the procedure cannot take place without State action. But again, we are not confronted with devising a solution to this dilemma, since the act of surrender is interpreted by this court as a total extinguishing of the mother’s interest in her parental rights.
The question now arises whether section 384 of the New York Social Services Law is constitutional, since it allows surrender of a child born out of wedlock by its natural mother without the appearance of the natural father, and requires no notice to the father at the time of surrender. At first appearance it would seem that this section suffers from the same constitutional defect as does section 111 of the Domestic Relations Law, in that the surrender procedure constitutes a gender-based distinction.
If section 384 of the Social Services Law is unconstitutional, then it ceases to have any legal impact and neither the consent of the mother nor the acquiescence of the father is necessary. Whether section 384 is unconstitutional and the consent or acquiescence of the father would be required is moot in this case since he has had no notice, is not entitled to notice and is not in a position to grant or withhold his consent or acquiescence. Under this interpretation the constitutionality or unconstitutionality of section 384 is irrelevant. The authority of this court to proceed with this adoption is not, however, based solely upon the authority of section 384 of the Social Services Law.
Section 111-a of the Domestic Relations Law which contains the same language as section 384-c of the Social Services Law provides that the father of an out-of-wedlock child who has established a relationship with the child or the mother, has a right to notice in an adoption proceeding. He is given an opportunity to appear before the court and to present evidence as to the best interests of the child. This right to notice is by no means without worth to out-of-wedlock fathers. Some fathers have been successful in preventing the adoption of a child by the natural mother and her husband. (Matter of *551 Gerald G.G., 61 AD2d 521, app dsmd 46 NY2d 1036.) Here, however, since the father does not fall into one of the categories of natural fathers who require prior notice of an adoption proceeding pursuant to section 111-a of the Domestic Relations Law, he acquires no rights under that section of the law.
In summary, then, in the case now before the court, the court finds that the natural mother of the child abandoned her child by surrendering the child pursuant to statutory procedures. The court also finds that the natural father of this child has no rights with regard to this child deriving either from a common-law or from a statutory basis.
WHY SECTION 111 OF THE NEW YORK DOMESTIC RELATIONS LAW MAY NOT BE READ AS GENDER NEUTRAL
With the declaration of the United States Supreme Court in April of 1979, that section 111 of the New York Domestic Relations Law is unconstitutional (Caban v Mohammed, 441 US 380, supra), the question arises as to whether the father of a child born out of wedlock now has rights concerning the future of the child that he did not previously possess. The Appellate Division, Fourth Department, has read the Caban decision to mean that "an unwed father is now accorded equality to an unwed mother within the purview of the law. We can no longer consider a father of an illegitimate child an unnecessary party to an adoption proceeding.” (Matter of Mitchell, 70 AD2d 367, 370, supra.) Other courts have held that the consent of the natural father to an adoption is now required as a result of the Caban decision. (People ex rel. Deborah G. v Doe, NYU, Dec. 19, 1979, p 15, col 5; Matter of "R” Children, 100 Misc 2d 248.)
The granting of statutory rights by judicial declaration was rejected by the United States Supreme Court in the case of Orr v Orr (440 US 268). In Orr the Supreme Court declared unconstitutional an Alabama statute granting alimony to women but not to men. The court indicated that to read the alimony statute as gender neutral would be to deprive the Alabama Legislature of its privilege of correcting the constitutional defect by either abolishing alimony for both women and men or by allowing alimony to be granted to both women and men. (440 US 268, 272, supra.) The court opined that for the judicial branch of government to make determinations as to an appropriate statutory alternative was impermissible.
A similar situation exists here. It is the Legislature and not *552 the court which must decide whether or not the consent of both of the parents of a child born out of wedlock is necessary to an adoption or whether the consent of neither parent is required. Such a determination is beyond the competence of this court.
Ordinarily where a statute is declared unconstitutional by the United States Supreme Court it simply ceases to exist in a legal sense. (Miller v Miller, 504 F2d 1067; see Minnesota Sugar Co. v Iverson, 91 Minn 30.) Thus, section 111 of the Domestic Relations Law has no legal effect and, possibly, no consent is required of anyone prior to the adoption of a child. Such an interpretation, of course, creates an intolerable situation since an adoption proceeding is a statutory proceeding, unknown to the common law, and consent is an integral part of the proceeding.
The basis of the court’s objection to the constitutionality of section 111 of the Domestic Relations Law in Caban was the gender-based distinction between unwed mothers and unwed fathers found in paragraph (c) of subdivision 1 of the law. (See p 546, supra.) That section of the law does not apply in this case, since here the consent of Catholic Charities, a duly authorized agency having lawful custody of the child, is the only consent required (Domestic Relations Law, § 111, subd 1, par [d]), since the mother has abandoned the child by surrendering the child and the father has neither common-law nor statutorily granted rights.
Were this not a case involving an authorized agency the results might be different. However, since an authorized agency is involved, no further consents are necessary.
The petition for the adoption of the subject child is approved.

. Section 384-c of the Social Services Law.
"2. Persons entitled to notice, pursuant to subdivision one of this section, shall include:
"(a) Any person adjudicated by a court in this state to be the father of the child;
"(b) any person adjudicated by a court of another state or territory of the United States to be the father of the child, when a certified copy of the court order has been filed with the putative father registry, pursuant to section three hundred seventy-two-c of this chapter;
"(c) any person who has timely filed an unrevoked notice of intent to claim paternity of the child, pursuant to section three hundred seventy-two-c of this chapter;
"(d) any person who is recorded on the child’s birth certificate as the child’s father;
"(e) any person who is openly living with the child and the child’s mother at the time the proceeding is initiated or at the time the child was placed in the care of an authorized agency, and who is holding himself out to be the child’s father;
"(f) any person who has been identified as the child’s father by the mother in written, sworn statement; and
"(g) any person who was married to the child’s mother within six months subsequent to the birth of the child and prior to the execution of a surrender instrument or the initiation of a proceeding pursuant to section three hundred eighty-four-b.”

. Married parents have an equal right to the custody of their children. (Domestic Relations Law, § 240.)