Gabrielli, J.
Subdivision 2 of section 111 of the Domestic Relations Law provides that a natural parent must give consent to the adoption of his or her child by another unless the natural parent has abandoned the child. The question in this case is whether the respondent natural father abandoned his three children to their mother, his former wife, and her second husband who has petitioned for their adoption.
Talbot G., the natural father, married Susan (G.) W. in Hawaii in 1959. Three children were born of the marriage which ended in divorce in early 1964. Susan at that time brought the children to New York under the terms of a separation agreement incorporated in the decree of divorce awarding her custody and requiring a total of $300 per month from Talbot for child support (reduced by half in 1968 for a lack of finances). In 1966 an attempted reconciliation failed. In March, 1967 she married *78 Herbert W. who along with Susan, instigated this adoption proceeding in June, 1972.
A prior adoption proceeding was commenced which culminated in an unreported decision rendered in September, 1970 to the effect that although Talbot had made no regular support payments, with the exception of $1,700 paid at the time of the hearing, and that although he had paid little attention to the children, he had not abandoned them. It was found that in June, 1968 Talbot spent six weeks in New York during which he visited with his children; that between 1966-1970 he had telephoned them twice a year; and that he had sent them birthday cards only once and given them small gifts. It was also found that Talbot was in financial difficulties, his money having become encumbered by the Internal Revenue Service; that he had commenced proceedings to enforce visitation and to have his children registered in school under the name of Gr., rather than W., although the latter proceeding was dismissed for failure to prosecute.
Additionally, it was found that Talbot had failed to make further support payments and had not visited the children until this proceeding was started. He had, since 1970, made several telephone calls, sent the children Christmas presents and brought gifts at the time he visited them in June, 1972 when this proceeding was underway.
It appears to be uncontradicted that he called the children on Easter 1972 at which time he told them he was coming to visit them and he later wrote and advised of the time of his arrival. Shortly after his arrival he was arrested on a warrant based on his violation of a support order previously procured by Susan. After his release on bail he made the aforesaid visitation, this proceeding having been commenced at about the same time. Thus, he had arranged to visit the children and followed through on that arrangement before this proceeding was begun although due to the arrest he did not actually see the children and give them the gifts until after the proceeding was begun.
The children indicated to the Family Court Judge that they would prefer adoption and also confirmed the father’s testimony that he had sent money on their birthdays. Susan had denied this during her testimony, but the children told the Judge that *79 she had handed them the money from the envelopes she had opened. At the conclusion of the hearing in this proceeding Talbot paid $1,400 on his support arrears.
The Family Court found petitioners to have sustained their burden of proving abandonment. Emphasis was placed on the fact that “ the only time this respondent even attempted to fulfill his parental duties was after petitioners instituted adoption proceedings but, as has been noted, the adoption proceeding was not commenced until after Talbot had indicated he was coming to visit. The court also emphasized the lack of support payments, finding it “ incredible ” that Talbot could raise $1,700 on one occasion and $1,400 on another, both times being, however, the occasion of adoption proceedings. The court was critical not only of Talbot’s failure to support, but also his failure to inquire after their wellbeing or proffer any sort of parental love. The court found that Talbot’s “ actions in making telephone calls once or twice a year, sending birthday cards containing money and a very infrequent gift, are a sham and contrived to give an appearance of compliance with legal requirements so as to avoid abandonment status and to thwart adoption.” More than what is displayed by the findings herein must be shown before the order may be disturbed for, as Judge Cabdozo pointed out in Matter of Bistany (239 N. Y. 19, 24) “ [a]fter the finding by the Appellate Division adverse to the petitioners, the order under review must stand unless we are prepared to hold that by acts so unequivocal as to bear one interpretation and one only the [parent] manifested an intention to abandon the [children] forever ”. Upon this record we may not indulge in such an interpretation.
However much one might be.impressed with Family Court’s graphic denunciation of Talbot as an inadequate father, we are unable to agree with him that Talbot’s “ neglect ” amounts to legal abandonment. Mere inadequacy is not the test. The Appellate Division was quite correct in its unanimous memorandum of reversal in stating: “ In our opinion, petitioners have not met their heavy burden of establishing an abandonment within the purview of section 111 of the Domestic Relations Law (Matter of Bistany, 239 N. Y. 18; Matter of Porras, 13 A D 2d 239; Matter of Stuart, 35 A D 2d 785; Matter of Cocozza v. Antidormi, 35 A D 2d 810).”
*80 The question whether a divorced parent has abandoned his or her children has received no recent attention from this court. We see no reason to depart in such a situation from the guiding rule in those cases where an unwed mother gives up her child for adoption and later seeks -to prevent adoption by others and regain custody. Thus, abandonment can be made out only from “ a settled purpose to be rid of all parental obligations and to forego all parental rights ” (Matter of Maxwell, 4 N Y 2d 429, 433; see, also, Spence-Chapin Adoption Serv. v. Polk, 29 N Y 2d 196; People ex rel. Scarpetta v. Spence-Chapin Adoption Serv., 28 N Y 2d 185, cert. den. 404 U. S. 805; People ex rel. Anonymous v. Anonymous, 10 N Y 2d 332; Matter of Bistany, supra). As in those unwed mother cases where this court found abandonment to have been established there must be a complete “ repudiation of [parenthood and an abandonment of [parental] rights and responsibilities ” (People ex rel. Anonymous v. Anonymous, supra, p. 336; Matter of Maxwell, supra). The Appellate Division has correctly appropriated this rule to the divorced parent in other cases (Matter of Cocozza v. Antidormi, 35 A D 2d 810, supra; Matter of Porras, 13 A D 2d 239, supra); and this court affirmed a finding of no abandonment on facts bearing no significant difference from those here presented except there the father’s lack of monetary support was not an important factor (Matter of Willing, 271 App. Div. 935, affd. 298 N. Y. 566).
Certainly the inability of Talbot to meet his financial obligations to his children because of his tax problems; or, as the record seems to indicate, because of. a combination of such inability and some unwillingness to see to such obligations, might be an element in the case tending toward proof of abandonment. Such an element is properly to be considered, but it does not determine the question. Even where the flame of parental interest is reduced to a flicker the courts may not properly intervene to dissolve the parentage. The relationship between minor children and their natural parents is jealously guarded (Matter of Livingston, 151 App. Div. 1, 7; Matter of Anonymous, 178 Misc. 142, 146; Caruso v. Caruso, 175 Misc. 290, 292), and we cannot say that in this case such a relationship has been provéd as having been concluded. (See Termination of Parental Rights, 32 N. Y. U. Law Rev. 579, 586, 587.) *81 Talbot’s communications with his children, sporadic and infrequent as they were, evinced that modicum of attention sufficient to defeat petitioners’ burden of proving abandonment.
The order appealed from should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Rabin and Stevens concur.
Order affirmed, with costs to respondent.