In the Matter of the Adoption of DREW B. GOLDMAN. CATHERINE A. GOLDMAN, Respondent; MARY J. GOLDMAN, Appellant.

First Department, March 9, 1976

*Herbert Schrank* of counsel *(Ralph R. Hochberg* with him on the brief; *Goldstein & Schrank,* attorneys), for appellant.

*David A. Field* of counsel *(DiFalco, Field, Lomenzo & O'Rourke,* attorneys), for respondent.

BIRNS, J. Upon review of the record below, we do not agree that the facts adduced at the hearing before the Surrogate supported the conclusion that appellant abandoned her 14-year-old son, Drew Baron, thus obviating the necessity to obtain her consent to his adoption by the second wife of appellant's former husband (Domestic Relations Law, § 111).

Thirteen years after marriage, appellant and her former husband were divorced, but the appellant continued to have custody of the three children of the marriage in accord with the provisions of a separation agreement which preceded the divorce and was incorporated in the divorce decree. While appellant continued to reside in Carmel, New York, the two older children, in 1966 and 1967, respectively, voluntarily changed their residence to the home of their father, appellant's former husband. The third child, Drew Baron, remained

with appellant. In 1968 appellant was required to undergo a laminectomy, a serious surgical procedure. Because of her anticipated incapacitation, she requested her former husband to care for her son while she was hospitalized. From that time on, Drew Baron has continued to reside with his father and petitioner. It is undisputed that the son desires the adoption sought herein.

It is unnecessary to dwell in detail on the factual issues relating to the number of times appellant communicated with her son during the six years intervening between 1968 and the hearing before the Surrogate in 1974, or the number of times she visited him. The fact is that she did communicate with her son by sending him gifts and birthday cards, although it may be concluded that her visits and communications were of decreasing frequency. Appellant maintained that she was discouraged by her former husband and others from visits and communications. The record also shows that appellant was not home on certain weekends when her son expected to visit her. Undoubtedly, he could very well question appellant's willingness or desire to see him. It is also a fact that during the last three years there has been no visitation between mother and son.

In concluding that appellant had in fact abandoned her son, the court below focused on appellant's intent by measuring her conduct in terms of the standard found in section 371 of the Social Services Law where abandonment may be found in a case in which a parent fails to visit a child "for six months without good reason." However, the Social Services Law broadly deals with the availability of various forms of State aid for the benefit of neglected children and the conditions under which such aid will be provided. Among other areas, it covers the administration of public assistance and medical assistance. More specifically, article 6 (the article in which section 371 is found) concerns the State's role in the care and protection of deprived and neglected children. The ambit of article 6 is the interrelation of the State's welfare program with private individuals, not the interrelation of one private individual with another. Thus the application of the said section to the facts at bar is misplaced. There is no direct evidence in this record however to establish that at any time appellant demonstrated or evinced an intent to sever the parental bond which tied her to her son.

In cases such as the one before us, the law requires a

demonstration of "a settled purpose to be rid of all parental obligations and to forego all parental rights" *(Matter of Maxwell,* 4 NY2d 429, 433; *Matter of Beshures,* 41 AD2d 1016).

The Court of Appeals recently declared that neglect could not be equated with legal abandonment nor was "mere inadequacy" of a parent as a parent the test to be applied. In *Matter of Susan W. v Talbot G.* (34 NY2d 76) our Court of Appeals analyzed a father's history of inability or unwillingness to meet the needs of his children and opined that such factors might tend to support a finding of abandonment. However, the court cautioned that such factors although properly considered are not determinative on the question of abandonment. "Even where the flame of parental interest is reduced to a flicker the courts may not properly intervene to dissolve the parentage. The relationship between minor children and their natural parents is jealously guarded [citing cases], and we cannot say that in this case such a relationship has been proved as having been concluded. * * * Talbot's communications with his children, sporadic and infrequent as they were, evinced that modicum of attention sufficient to defeat petitioners' burden of proving abandonment." *(Matter of Susan W. v Talbot G., supra,* pp 80-81.)

While the desire of the child to be adopted has been made manifest, we are concerned here not with the child's "best interest" as a determinative factor, but rather with those factors which might foreclose the right of a parent to remain as a parent.

Petitioner in this case has the "heavy burden of proving abandonment" *(Matter of Bistany,* 239 NY 19; *Matter of Stuart,* 35 AD2d 785; *Matter of Cocozzo v Autidormi,* 35 AD2d 810). In our view the burden has not been sustained.

Under the facts disclosed in this record, although the flame of parental interest may be a mere flicker, nevertheless, this court should not extend its hand to extinguish the light.

The order entered in the office of the clerk of the Surrogate's Court, New York County (MIDONICK, S.), on November 22, 1974, which granted petition for adoption, should be reversed on the law and on the facts and in the exercise of discretion, and the petition dismissed, with costs.

STEVENS, P.J., LUPIANO and LANE, JJ., concur with BIRNS, J.; KUPFERMAN, J., dissents and votes to affirm on opinion of MIDONICK, S.

Order, Surrogate's Court, New York County, entered on November 22, 1974, reversed, on the law and on the facts and in the exercise of discretion, and the petition dismissed. Appellant shall recover of respondent $60 costs and disbursements of this appeal.