■ In the Matter of the Commitment of "FEMALE" WADDELL and Another. SPENCE-CHAPIN ADOPTION SERVICE, Respondent; CHARLOTTE E. WADDELL et al., Appellants.—Orders, Surrogate's Court, New York County, entered on October 24, 1977, affirmed on the opinion of Midonick, S., without costs and without disbursements. Concur—Kupferman, J. P., Lupiano and Sandler, JJ.; Lane and Sullivan, JJ., dissent in a memorandum by Sullivan, J., as follows: In this commitment proceeding brought pursuant to section 384 of the Social Services Law to free twin minor children for eventual adoption, without parental consent, petitioner asserts abandonment as the ground for the relief sought (Social Services Law, §§ 371, 384). After a trial, the Surrogate, concededly with good intentions, placed great stress on and seems to have been persuaded by, the best interests of the children. Unfortunately, with all due deference to the trier of the fact, who had the opportunity to hear the witnesses and evaluate the testimony, the children's best interests were not the standard by which to determine if there had been an abandonment. An abandonment occurs when a parent "evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law, § 384-b, subd 5, par [a]). Although section 384-b (subd 5, par [a]) did not become effective until January 1, 1977, a date subsequent to the operative facts herein, there is no issue as to retroactivity since the new statute did no more than codify existing case law. The children were born on March 2, 1971. Seven days after giving birth, the mother, an unmarried Kentucky resident, authorized placement of the twins in foster care because of an inability to provide for them. Since the filing of the petition on December 12, 1973, the agency has refused to permit the mother to see the children, precisely because of the pendency of this proceeding. The Surrogate conceded that "Because of distance and financial problems, it was not easy for the natural mother to visit the twins." Before the filing of the petition she twice requested visitation. Once, her request was rejected by the agency. On the other occasion she did visit the children. She pressed the agency to insure that her children would be placed with a Black foster family, as she had requested. She never consented to an adoption, and, in fact, refused to sign consent documents which were sent to her. She maintained contact with the agency concerning her children. And while the appellant may have vacillated on occasion between surrendering the twins for adoption and making her own plans for them, the one constant that characterizes her conduct is a refusal to cut the umbilical cord. Whatever the record may reveal about appellant's fitness as a mother, it does not evince a settled purpose on her part to be rid of all parental obligations and forego all parental rights. *(Matter of Susan W. v Talbot G.,* 34 NY2d 76, 80.) It may well be that a case of permanent neglect could be made against appellant (Social Services Law, § 384-b, subd 7), but the agency chose not to proceed on that ground. In this connection, it should be noted that the failure by an agency to use diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child bars a finding of permanent neglect. Petitioner should either prove the statutory elements of abandonment, or institute a petition under a statutory section, the requirements of which it can meet. The adjudication of a natural

parent's rights calls for the exercise of the most sensitive judicial discretion. This responsibility is made more onerous by the apparent statutory bias in favor of the natural mother. However, any defects in the statutory provisions dealing with abandonment and permanent neglect may be remedied only by the Legislature, and cannot be circumvented, on an *ad hoc* basis, by judicial grafting, no matter how well intentioned. Accordingly, the order appealed from should be reversed, the application to free the children for adoption denied, and the petition dismissed.