IN THE MATTER OF THE ADOPTION OF JAMES EDWIN CARDO

No. 7826SC676

(Filed 5 June 1979)

**1. Adoption § 2.2— abandonment of child—child's health—admissibility of evidence**

   In a proceeding for declaration of abandonment, the trial court did not err in permitting the child's mother to testify concerning his health, since testimony that the child was in need of medical attention and respondent failed to provide funds or otherwise show concern about his condition tended to be some evidence of willful abandonment.

**2. Adoption § 2.2— petition for declaration of abandonment filed—money sent to child—evidence irrelevant**

   In a proceeding for declaration of abandonment, the trial court did not err in excluding evidence of funds sent by respondent to the child's mother after the filing of the petition for a declaration of abandonment, since any funds sent after the filing would be irrelevant to the issue of whether the child had been abandoned as alleged in the petition.

**3. Adoption § 2.2— abandonment of child—jury instruction**

   In a proceeding for declaration of abandonment, the trial court's instruction which included a statement that the abandonment must be purposely and deliberately done and which also included a recapitulation of respondent's evidence which showed that he did not have sufficient income to provide child support was proper; furthermore, the court was not required to instruct that the jury, if unsure of the answer to the issue, should consider the best interests of the child and should resolve a conflict of interest between the child and an adult in favor of the child.

**4. Adoption § 2.2— abandonment of child—sufficiency of evidence**

   Evidence was sufficient to be submitted to the jury in a proceeding for declaration of abandonment where it tended to show that respondent did not write, call or inquire about his son from March 1976 until June 1977; respondent knew his former wife was planning to remarry and he could have contacted the court to obtain her new address; the wife notified respondent's parents as to her address in December 1976 but did not hear from respondent until June 1977; and respondent failed to provide support for the child during the six months prior to the institution of this action.

APPEAL by respondent from *Ferrell, Judge.* Judgment entered 13 February 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 5 April 1979.

This proceeding for a declaration of abandonment was instituted on 20 June 1977 by the stepfather of James Edwin Cardo

(Jamie) against the child's father. The respondent father denied having abandoned his child and requested a jury trial. The child is the son of the respondent and the petitioner's wife who were divorced in February, 1972. The mother was granted custody at that time.

The evidence tends to show that after his divorce, Jamie and his mother visited with the respondent and his parents in Jacksonville, Florida on holidays and sometimes on the weekends. Jamie and his mother lived in Gainesville, Florida where the respondent came to visit four or five times in 1973 and 1974. The respondent also called to inquire about Jamie when he and his mother moved to Clewiston, Florida. The respondent was working as a fisherman on a commercial fishing vessel. Under court order, he was obligated to pay $15.00 per week for child support. He paid approximately $545.00 in 1973 as child support, $500.00 in 1974 and $420.00 in 1975. The respondent was jailed in January, 1976, for failing to make payments but paid $360.00 and was released after three or four hours. He paid $60.00 in February, 1976, but paid nothing thereafter until 10 June 1977.

Petitioner married Jamie's mother in June of 1976 and they moved to Charlotte. Jamie's mother wrote to the court in Gainesville to give them her new address. She had told the respondent and his parents that she was planning to marry the petitioner. No support payments or other communications were received from the respondent from March, 1976, until June, 1977. Respondent sent $100.00 on 10 June 1977 after the petitioner had contacted the respondent's parents in May, 1977, concerning a consent to the adoption. Jamie received several presents from the respondent's parents at Christmas of 1976 and in March of 1977.

Jamie's mother testified, over objection, that Jamie had several physical and emotional problems which surfaced in June, 1976. She wrote the respondent's parents about these problems in December, 1976. She did not receive any reply from the respondent.

The respondent's father testified that his son worked in Cape Canaveral and could be located through a friend although it might take a week to find him. He knew that the respondent had almost no income. The respondent did, however, contribute a little for the presents sent to Jamie. Respondent's father remembered be-

ing contacted by the petitioner's attorney concerning the respondent's consent to the adoption. He did not believe that the respondent would give his consent.

The petitioner testified that since his marriage he has provided for Jamie's support. The respondent sent $100.00 on 10 June 1977. Petitioner would have testified that they received $1,500.00 after the petition was filed, but the objection to that question was sustained.

The respondent, testifying in his own behalf, stated that he was now living with his parents and working as a foreman for a construction firm. He had previously worked as a commercial fisherman. In September, 1976, he was involved in a boating accident in which one man drowned. Respondent was in the water for fifteen hours and was severely injured. He admitted that he was still obligated by the court order to pay $15.00 a week and that he had never paid the full amount owed in any year. When he was arrested in January, 1976, his father paid to have him released. He testified that he did not pay child support or call his son because he was embarrassed that he did not have the money. His income in 1972 was $4,500.00, in 1973 was $2,286.00, in 1974 was $1,900.00, in 1975 was $2,200.00, and in 1976 was $3,700.00. He last saw the child in January of 1976. His former wife never restricted his right to see the child prior to June of 1977.

Respondent's motions for a directed verdict were denied. The jury found that the respondent willfully abandoned the child for at least six consecutive months prior to 20 June 1977. From this judgment, the respondent appealed.

*Farris, Mallard & Underwood, by Ray S. Farris, for petitioner appellee.*

*Hamel, Hamel, Welling & Pearce, by Hugo A. Pearce III, for resondent appellant.*

VAUGHN, Judge.

The sole issue for trial was whether respondent had abandoned the child for six months immediately preceding the date the petition was filed, 20 June 1977. *See* G.S. 48-2(3a).

[1]   The respondent first contends that the trial court erred in allowing Jamie's mother to testify about his health. He argues that this testimony was irrelevant to the issue of whether Jamie had been abandoned and was prejudicial. Furthermore, he argues, the testimony was not limited to the time period prior to the date the petition was filed but included testimony concerning Jamie's health at the time of the hearing. We find that the respondent was not prejudiced by this testimony. That the child was in need of medical attention and respondent failed to provide funds or otherwise show concern about his condition, tends to be some evidence of willful abandonment. Jamie's mother informed the respondent's parents in December, 1976, of Jamie's health problems but received no communication from the respondent until June, 1977. This assignment of error is overruled.

[2]   Respondent next contends that the court erred in disallowing testimony of funds sent by the respondent after the filing of the petition for a declaration of abandonment. The record indicates that the respondent sent $1,500.00 for the child's care after 20 June 1977. Any funds sent after this date would be irrelevant to the issue of whether Jamie had been abandoned as alleged in the petition and, therefore, this evidence would not be admissible. Respondent's reliance on *Pratt v. Bishop*, 257 N.C. 486, 126 S.E. 2d 597 (1962), is misplaced. In *Pratt*, evidence tending to show that the father attempted to sell his consent to the adoption after the filing of the petition was admitted to show that he had a "weak cause" in protesting the action for abandonment. This evidence was, therefore, used to confirm guilt. In the present case, however, the respondent seeks to exonerate his prior conduct by actions taken, in all likelihood, in response to the filing of the petition seeking a declaration of abandonment. Legal abandonment, however, is not a transitory concept that may be recessed at the whim of the transgressor.

[3]   Respondent contends that the judge did not properly define willful abandonment. He also argues that the judge should have instructed the jury that an explanation as to why a parent has failed to contribute to the support of his child could negate a willful intent to abandon. The trial judge instructed the jury as follows.

        "I will now define, Members of the Jury, the terms 'abandonment' and 'willful.' The term 'abandonment,' as used

in this legal proceeding, means there must be willful or intentional conduct on the part of the Respondent parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child, or a willful neglect and refusal to perform the natural and legal obligations of parental care and support.

"The term 'willful,' Members of the Jury, as used in this legal proceeding, means that an alleged abandonment must be done purposely and deliberately, indicating a purpose to do it without authority, considerlessly, whether one has the right or not, in violation of the law. In determining whether or not this has been willful abandonment, you may consider whether the Respondent parent has withheld his presence from the child, his love, his care, the opportunity for the child to display affection. Also you may consider the willful neglect, if any, to lend support and maintenance to or for the benefit of the child.

"Now, Members of the Jury, the responsibility to provide a child food, clothing, and shelter endures constantly, and thus a failure to perform the parental duty to support and maintain a child may be considered by you in determining whether a parent has relinquished his claim to the child. However, such failure does not in and of itself constitute willful abandonment."

After some deliberation, the jury requested that these instructions be repeated and the judge complied. The second instruction did not differ from the first. We find that these instructions were not erroneous.

In *Pratt v. Bishop, supra,* Justice Sharp (now Chief Justice) gave an in depth review of what constitutes willful abandonment for the purposes of G.S. 48-2. Justice Sharp stated that

"abandonment imports any wilful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child . . . .

"Abandonment has also been defined as wilful neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent

withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child . . . .

"Certainly a continued wilful failure to perform the parental duty to support and maintain a child would be evidence that a parent had relinquished his claim to the child. However, a mere failure of the parent of a minor child in the custody of a third person to contribute to its support does not in and of itself constitute abandonment. Explanations could be made which would be inconsistent with a wilful intent to abandon." (Citations omitted.) *Pratt v. Bishop, supra,* at 501-02.

In considering a request for an instruction, "the court is not required to charge the jury in the precise language of the instructions requested so long as the substance of the request is included in the charge." *Faeber v. E.C.T. Corp.,* 16 N.C. App. 429, 430, 192 S.E. 2d 1 (1972). The respondent wished to emphasize that parents may explain why they have failed to support their child. Although this point was not specifically set out, the jury was told that the abandonment must be purposely and deliberately done. Willful neglect, if any, to provide support is to be considered but the failure to provide support does not, in and of itself, constitute willful abandonment. The court also related the respondent's evidence which showed that he did not have sufficient income to provide child support. Taken as a whole, this instruction was proper. *See Lewis v. Barnhill,* 267 N.C. 457, 148 S.E. 2d 536 (1966).

Respondent contends that the court erred in failing to instruct the jury that, when it is unsure of the answer to the issue, it should consider the best interests of the child, and when the interests of the child and an adult are in conflict, this conflict should be resolved in the child's favor. We first note that this instruction was requested by the petitioner, not the respondent. Indeed, the instruction would most likely have been prejudicial to respondent. Furthermore, this passage, taken from G.S. 48-1(3), is a statement of legislative policy with respect to adoptions. A specific definition as to what constitutes an abandoned child is provided by G.S. 48-2(3a). This assignment of error is overruled.

**[4]** Finally, respondent contends that the court erred in failing to grant his motion for a directed verdict and his motion for judgment notwithstanding the verdict. When taken in the light most favorable to the petitioner, the evidence was sufficient to support a finding that the respondent had willfully abandoned Jamie. G.S. 48-2(3a) defines an abandoned child as "any child who has been willfully abandoned at least six consecutive months immediately preceding institution of an action or proceeding to declare the child to be an abandoned child." As earlier stated, willful abandonment is willful or intentional conduct showing an intent to forego all parental duties. *Pratt v. Bishop, supra.* The evidence showed that the respondent did not write, call or inquire about his son from March, 1976, until June, 1977. He knew his former wife was planning to remarry and he could have contacted the court to obtain her new address. She notified his parents as to her address in December, 1976, but did not hear from the respondent until June, 1977. The respondent failed to provide support for the child during the six months prior to the institution of this action. This evidence and the other evidence to which we have referred was sufficient to withstand the respondent's motions. We have carefully considered all of respondent's assignments of error and conclude that no prejudicial error has been shown.

No error.

Judges ERWIN and MARTIN (Harry C.) concur.