IN RE ADOPTION OF DANA D. AND ERIC L. SIMONTON,
MINOR CHILDREN.
HOWARD L. SIMONTON, APPELLANT, v. JULEEN L.
YOUNG ET AL., APPELLEES.

320 N.W.2d 449

Filed June 4, 1982. No. 81-682.

William T. Wright of Parker, Grossart, Bahensky & Wright, for appellant.

Douglas Pauley of Conway and Connolly, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

The county court entered a decree which was filed on January 14, 1981, ordering the adoption of Eric and Dana Simonton, then ages 10 and 13 respectively, on the petition of Kenneth L. and Juleen L. Young, the stepfather and natural mother of said children. In doing so, it found that Howard L.

Simonton, the natural father, had "abandoned his minor children in excess of six months before the institution of these proceedings." Howard appealed to the District Court, which affirmed the county court, and the matter is now here on appeal following the filing of a notice of appeal in the trial court on August 25, 1981.

Although no bill of exceptions from the District Court appears in the record, the testimony from county court was properly filed in the District Court, and it is marked as an exhibit over the initials of the district judge. There is no objection by either party to this apparent deficiency in the record, and it is obvious that such testimony was considered as having been received in evidence. Accordingly, we will consider the same on appeal to this court. *Blaha GMC-Jeep, Inc. v. Frerichs, ante* p. 103, 317 N.W.2d 894 (1982). Insofar as this case is concerned, the standard of review in both the District Court and in this court is de novo on the record. *Riggert v. King,* 192 Neb. 607, 223 N.W.2d 155 (1974); Neb. Rev. Stat. § 24-541 (Reissue 1979).

Assigned as errors are the claims that both the county court and the District Court found abandonment *in excess of 6 months* before institution of adoption proceedings, rather than for *6 months next preceding* the filing of the adoption petition; that the finding of abandonment is not supported by clear and convincing evidence; and that the courts below considered the best interests of the children before having made the factual determination of abandonment.

We recently determined that the burden of proof as to the issues of abandonment and substitute consent in an adoption proceeding requires that an abandonment be established by clear and convincing evidence. *In re Guardianship of Sain, ante* p. 508, 319 N.W.2d 100 (1982).

Howard and Juleen were married in 1962 and their

marriage was dissolved in April of 1972 by a decree of the District Court for Lancaster County, Nebraska. Juleen was awarded custody of the two children. Juleen and Kenneth were married in November of 1975.

Juleen was allowed to testify over objection as to Howard's contacts with the children from the time of the divorce until the time of the hearing. Although Neb. Rev. Stat. § 43-104(3)(b) (Reissue 1978) requires proof of abandonment for "at least six months next preceding the filing of the adoption petition," as we will show later we believe that the testimony was properly received. We preface this discussion with Juleen's admission that although the petition for adoption was filed in the county court in August of 1980, a motion to secure the permission of the District Court for Lancaster County for the adoption was filed in April of 1979.

According to her testimony, both Juleen and Howard lived in Colorado from 1972 until 1975, and although Howard saw the boys on occasion, it was not more than once every 2 or 3 months. Juleen went on to testify that after her return to Nebraska in 1975 and up until the filing of this action, Howard saw the boys "not very much at all." After referring to her notes, Juleen said that he had had the boys for Christmas Day, 1975, for 2 days in 1976, and 2 separate days in 1977. She also mentioned that Howard had written a certified letter to her during the summer of 1980, inquiring as to whether the boys could come out to Colorado to visit. His request was refused by Juleen, she said, because "he had not seen the boys for such a long time and had not paid any child support and since we had filed the adoption, I did not feel that it would be to the best interest of the boys for them to see him at that time." Finally, in this regard, she testified that she had not refused visitations at any other time, that other than the visits mentioned Howard had not requested any visits, and

that Howard had last seen the boys just before Christmas of 1977.

With regard to child support payments, Juleen testified that Howard had made the following payments through the clerk of the Lancaster County District Court: $150 monthly support payments from June to December 1972; a $1,800 lump sum payment in December 1979; and two $150 payments in June and August of 1980. Furthermore, Juleen agreed that Howard had given her the equivalent of $550 in child support in the form of his having rented a truck and transported her things back to Nebraska in 1975.

Juleen also testified about other forms of contact Howard had maintained with the boys. She stated that during the period between 1975 and 1977 Howard had made some phone calls to the boys, sent few, if any, cards, and had given one of the boys a $20 birthday gift in January of 1977 or 1978. She also agreed that he had given each of the boys $50 for Christmas in 1979, and that just before the court appearance in the District Court for Lancaster County in June of 1980, when the court granted permission to adopt, Howard had called the boys on the telephone. He also sent them cards in the latter part of July 1980, called them again in July, and sent them cards twice in September and at Halloween.

Howard's testimony would tend to show that he made all child support payments for which he was obligated through the year 1975. He also claims to have made direct cash payments of $1,800 in 1976 and $600 in 1977. He admits paying nothing in 1978, agrees as to the $1,800 paid in 1979, and concedes that no more than $300 was paid in 1980. He contends that the payments not disclosed by the clerk's records or admitted by Juleen were direct payments by cash or checks, receipts for which he had, but that they were located at his home in Colorado. His reasons for failing to make the support payments include business conditions, an automobile accident,

and the absence of a request for payments from the children's mother. Howard also claimed to have sent cards to the boys in 1980, as related by their mother, and he had retained photocopies of them. He insisted that he had made many phone calls during the year 1980, but was only able to complete the calls on one or two occasions. He says that he was specifically refused a visitation in July of 1980, and because of trouble with visitations in the past, he filed an application in June of 1980 with the District Court for Lancaster County for specific visitations. He stated that the only reason he did not visit his boys in the period March to August of 1980 was due to Juleen's denial of visitation rights. Howard testified that he loved his children and wished to remain as a legal parent and to have opportunities to be with them.

As a general rule, adoption statutes will be construed strictly in favor of the rights of the natural parents in controversies involving termination of the relation of the parent and child, and especially is this true in those cases where it is claimed that owing to the willful abandonment of the child, the consent of the parent to the adoption is not required. *McCauley v. Stewart,* 177 Neb. 759, 131 N.W.2d 174 (1964); *In re Gregory,* 118 R.I. 178, 372, A.2d 1277 (1977); *In re Sharp,* 197 Kan. 502, 419 P.2d 812 (1966).

Section 43-104 requires consent of the parents of a child who is to be adopted, except that no consent is required of a parent who has "abandoned the child for at least six months next preceding the filing of the adoption petition." Apparently we have never defined the word "abandoned" when used in this context. However, the courts of other jurisdictions have done so. " 'To constitute abandonment under our code it must appear . . . that there has been by the parents a giving-up or total desertion of the minor child. In other words, there must be shown an absolute relinquishment of the custody and con-

trol of the minor and thus the laying aside by the parents of all care for it.' '' *In re Adoption of Christofferson,* 89 S.D. 287, 290, 232 N.W.2d 832, 834 (1975). North Carolina requires that there be "willful or intentional conduct on the part of the . . . parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child, or a willful neglect and refusal to perform the natural and legal obligations of parental care and support." *In re Cardo,* 41 N.C. App. 503, 507, 255 S.E.2d 440, 442 (1979).

Willful abandonment has been defined as "a voluntary and intentional relinquishment of the custody of the child to another, with the intent to *never again* claim the rights of a parent or perform the duty of a parent; or, second, an intentional withholding from the child, without just cause or excuse, by the parent, of his presence, his care, his love and his protection, maintenance, and the opportunity for the display of filial affection . . . ." *Young v. Young,* 588 S.W.2d 207, 209 (Mo. App. 1979).

There can be no serious dispute but that the critical period of time during which abandonment must be shown is the 6 months immediately preceding the filing of the adoption petition. § 43-104(3)(b). *In re Cardo, supra; Matter of Adoption of Baby Girl Doe,* 621 S.W.2d 87 (Mo. App. 1981). However, the various definitions of abandonment do not require us to view this statutory period in a vacuum. One may consider the evidence of a parent's conduct, either before or after the statutory period, for this evidence is relevant to a determination of whether the purpose and intent of that parent was to abandon his child or children. *Young v. Young, supra.*

Where there has been a protracted period of totally unjustified failure to exercise parental functions, an isolated contact or expression of interest does not necessarily negate the inference that a person no longer wishes to act in the role of parent to a child.

*Matter of Thomas F. L.,* 87 Misc. 2d 744, 386 N.Y.S.2d 726 (1976). The parental obligation is a positive duty which encompasses more than a financial obligation. It requires continuing interest in the child and a genuine effort to maintain communication and association with that child. Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child. *Matter of Adoption of David C.,* 479 Pa. 1, 387 A.2d 804 (1978).

The record adequately details the many shortcomings of this father in his relationship with his sons. It leaves some question as to whether he is genuinely repentant of his past behavior or simply desires to place an obstacle in the mother's plans for adoption. However, he is benefited by the legal axiom that the ties of a natural parent are not to be treated lightly. *In re Sharp, supra.*

This case is strikingly similar on its facts to that of *Matter of Susan W. v. Talbot G.,* 34 N.Y.2d 76, 356 N.Y.S.2d 34 (1974). In reviewing the factual findings of the Family Court, which found abandonment by the father, the New York Court of Appeals stated as follows: "Emphasis was placed on the fact that 'the only time this respondent even attempted to fulfill his parental duties was after petitioners instituted adoption proceedings'; but, as has been noted, the adoption proceeding was not commenced until after Talbot had indicated he was coming to visit. The court also emphasized the lack of support payments, finding it 'incredible' that Talbot could raise $1,700 on one occasion and $1,400 on another, both times being, however, the occasion of adoption proceedings. The court was critical not only of Talbot's failure to support, but also his failure to inquire after their wellbeing or proffer any sort of parental love. The court found that Talbot's 'actions in making telephone calls once or twice a year, sending birthday cards containing money and a very infrequent gift,

are a sham and contrived to give an appearance of compliance with legal requirements so as to avoid abandonment status and to thwart adoption.' '' *Id.* at 79, 356 N.Y.S.2d at 36.

Nevertheless, in concluding that the petitioners had not sustained their burden of proving abandonment by the father, the court went on to say: ''However much one might be impressed with Family Court's graphic denunciation of Talbot as an inadequate father, we are unable to agree with him that Talbot's 'neglect' amounts to legal abandonment. Mere inadequacy is not the test. . . . [A]bandonment can be made out only from 'a settled purpose to be rid of all parental obligations and to forego all parental rights' . . . . [T]here must be a complete 'repudiation of [parent]hood and an abandonment of [parental] rights and responsibilities' . . . . Even where the flame of parental interest is reduced to a flicker the courts may not properly intervene to dissolve the parentage.'' *Id.* at 79-80, 356 N.Y.S.2d at 37-38.

We conclude that the petitioners-appellees have failed to meet their burden of proving by clear and convincing evidence that appellant had acted in a manner evidencing a settled purpose to be rid of all parental obligations and to forego all parental rights. There is no evidence showing a complete repudiation of parenthood and an abandonment of parental rights and responsibilities. Therefore, we cannot find that appellant had abandoned these children within the meaning of the statutes governing adoptions, and, accordingly, the decree of adoption is vacated and the proceedings ordered dismissed.

REVERSED AND DISMISSED.