IN RE GUARDIANSHIP OF RICHARD ANDREW SAIN. PATRICIA L. ZERBS, APPELLANT, V. RICHARD H. SAIN, APPELLEE.

348 N.W.2d 435

Filed April 20, 1984. No. 83-793.

Charles R. H. Kluver of Taylor, Hornstein, Peters & Kluver, for appellant.

John B. Ashford of Dowd, Fahey & Ashford, for appellee.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

KRIVOSHA, C.J.

The appellant, Patricia Zerbs, appeals from a judgment entered by the county court for Sarpy County, Nebraska, and on appeal affirmed by the district court for Sarpy County, Nebraska, finding that the appellee, Richard H. Sain, had not abandoned his minor child. We affirm.

This is the second time this matter has been before this court, and much of the background leading up to the adoption is set out in that earlier opinion. See *In re Guardianship of Sain*, 211 Neb. 508, 319 N.W.2d 100 (1982) (*Sain I*). By reason of our holding in *Sain I* the sole issue presented to the county court was whether Richard H. Sain abandoned his minor child for at least 6 months next preceding the filing of the adoption petition as provided in Neb. Rev. Stat. § 43-104 (Reissue 1978), so that his consent was not required as provided by § 43-104(3). In *Sain I* we declared that abandonment for purposes of permitting substitute consent pursuant to Neb. Rev. Stat. §§ 43-104 and 43-105 (Reissue 1978) must be established by clear and convincing evidence. Clear and convincing evidence means evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. See *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984). We do not believe that the evidence

in this case establishes abandonment by clear and convincing evidence.

The record discloses that Patricia Zerbs and Richard Sain were married in 1970. In December of 1973, and shortly after the birth of the minor child involved in this matter, the parties separated. A decree dissolving the marriage of the parties was entered by the district court for Douglas County, Nebraska, on July 12, 1974, and custody of the minor child, who was then 6 months old, was awarded to Mrs. Zerbs. Mr. Sain was ordered to pay $30 a week child support and was granted visitation rights on Sunday afternoons. It appears from the record that during all of 1974 and 1975, and until the summer of 1976, Mr. Sain had no difficulty exercising his visitation rights and, in fact, did regularly exercise them. However, following Mrs. Zerbs' marriage to Stephen Zerbs on March 28, 1976, difficulty with regard to visitation began. In August of 1976 the minor child began to act negatively toward visits with his natural father. While the record is not as clear as it might be, it appears that the difficulty in part occurred by reason of the fact that the child was instructed to begin to recognize Mr. Zerbs as his father and to refer to him as such. The record further discloses that in August of 1976 the child abruptly and for an unknown reason threw "a tantrum" and said he did not love his father any more nor did he want to see him. Sain testified that he had asked Mrs. Zerbs to help with the problem, that he had offered to pay for professional help to solve the problem, but that Mrs. Zerbs was not cooperative. Sain last visited with his son on November 7, 1976, but continued during November to call the Zerbs' residence in an effort to talk to his son. He asked if his son wanted to visit with him, and each time the child refused. Moreover, Sain testified that he tried to make other contacts with his son but each time was obstructed. When he called, Mrs. Zerbs would tell him that the child did not want to see him; she also

told him that he would be unable to see the child at Christmas in 1976 because the Zerbs had made plans for the holidays. When he telephoned at Christmas 1976, the child said that he did not want to see his father. On January 2, 1977, Sain again attempted to visit the child, and the child screamed at the sight of Sain.

The record further discloses that but for one brief period, later explained, Sain paid child support regularly during the years 1974, 1975, and through December of 1976. Sain testified that he told Mrs. Zerbs that he was going to stop paying until such a time as his visitation was reinstated on the same basis as it was prior to the problem. Mrs. Zerbs made no effort to bring any action to require Sain to pay child support after that time. The record further discloses that Sain had earlier had a problem with Mrs. Zerbs concerning visitation, in 1974, and had discontinued paying child support for a brief period. At that time, when he stopped support payments, Mrs. Zerbs brought an action to require him to pay, and in those proceedings he was able to adjust his visitation rights. Sain testified that he stopped paying child support the second time because he expected Mrs. Zerbs to again take action to require him to pay and he would then attempt to adjust his visitation rights. While this procedure by either party was inappropriate, see *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980), it does nevertheless lend credence to Sain's explanation as to why he discontinued making child support payments in 1976. Additionally, the record discloses that the child was enrolled in preschool in September of 1978 under the name of Zerbs.

While it is true, as argued by Mrs. Zerbs, that the statute in question, § 43-104, refers to abandonment "for at least six months next preceding the filing of the adoption petition," we pointed out in *In re Adoption of Simonton*, 211 Neb. 777, 783, 320 N.W.2d 449, 453 (1982):

There can be no serious dispute but that the critical period of time during which abandonment must be shown is the 6 months immediately preceding the filing of the adoption petition. § 43-104(3)(b). *In re Cardo, supra*; *Matter of Adoption of Baby Girl Doe*, 621 S.W.2d 87 (Mo. App. 1981). However, the various definitions of abandonment do not require us to view this statutory period in a vacuum. One may consider the evidence of a parent's conduct, either before or after the statutory period, for this evidence is relevant to a determination of whether the purpose and intent of that parent was to abandon his child or children. *Young v. Young, supra.*

It appears to us that if one considers the relationship which existed between Mr. Sain and his child prior to Mrs. Zerbs' marriage and the difficulties which developed following the marriage, including the apparent lack of interest and support by Mrs. Zerbs in helping Sain maintain a relationship with his child, one cannot say that Sain abandoned his child within the meaning of the act. It may be for that reason that courts in the various jurisdictions which have considered the question of abandonment generally have agreed that abandonment must be absolute, complete, and intentional. See Annot., 35 A.L.R.2d 690 (1954). In the case of *D'Augustine v. Bush*, 269 S.C. 342, 345-46, 237 S.E.2d 384, 386 (1977), the court said:

Recognizing that the question of abandonment is largely one of intent to be determined in each case from all the facts and circumstances, we have held that, 'abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child,' 2 Am. Jur. (2d), Adoption, Section 32; but 'does not include an act or course of conduct by a parent which is done through force of circum-

stances or dire necessity,' 2 Am. Jur. (2d), Adoption, Section 33.

And in the case of *In re Cardo*, 41 N.C. App. 503, 507-08, 255 S.E.2d 440, 443 (1979), the court said:

"Abandonment has also been defined as wilful neglect and refusal to perform the natural and legal obligations of parental care and support. . . .

"Certainly a continued wilful failure to perform the parental duty to support and maintain a child would be evidence that a parent had relinquished his claim to the child. However, a mere failure of the parent of a minor child in the custody of a third person to contribute to its support does not in and of itself constitute abandonment. Explanations could be made which would be inconsistent with a wilful intent to abandon."

This view was generally adopted by this court in the *Simonton* case, where we said, in the syllabus of the court:

To prove abandonment in adoption proceedings, the evidence must clearly and convincingly show that the parent has acted toward the child in a manner evidencing a settled purpose to be rid of all parental obligations and to forego all parental rights, together with a complete repudiation of parenthood and an abandonment of parental rights and responsibilities.

We believe that where, as here, the record discloses that the parent exercised every right afforded him until the ability to exercise that right became nearly impossible or, at the very least, extremely painful for both the parent and the child, it cannot be said that the parent has voluntarily abandoned the child within the meaning of the law. While hindsight might reflect that Sain should have taken the initiative, we cannot say that his actions under the circumstances evidenced an intent to abandon his child. Were we to support Mrs. Zerbs' position in this case, we would be encouraging the custodial

parent to create disharmony between a child and a noncustodial parent in hopes that by doing so abandonment could be established and the parental rights of the noncustodial parent could be terminated by an adoption without the noncustodial parent's consent. We cannot believe that this was the intent of the law which requires that consent of both parents be obtained unless there has been an abandonment.

As we review the evidence in this case, we do not develop a firm belief or conviction that the noncustodial parent made a choice not to see his child any longer. Rather, we believe the record establishes for us, as it did for the county court in the first instance and the district court on appeal, that Mrs. Zerbs played an active role in preventing Mr. Sain from exercising his rights of visitation.

While Sain's failure to continue paying child support cannot be condoned or excused, it does not constitute abandonment. In *D'Augustine v. Bush*, *supra* at 347-48, 237 S.E.2d at 387, the South Carolina court noted:

> The preponderance of the testimony sustains the conclusion that appellant did not wilfully fail to visit and support his child but was prevented from doing so by the remarriage of the mother and her removal of the child . . . for several years where the antagonistic attitude of respondents made visitation inadvisable, if not impossible.

It is clearly inferable that those respondents did not want appellant to contribute to the support of the child or have any contact with him. Under this record, the failure to contribute to the support of the child is of little weight in establishing abandonment. We likewise believe that the testimony in this case makes it clearly inferable that Mrs. Zerbs did not want Mr. Sain to contribute to the support or welfare of the child so long as he did not attempt to see the child, and she was content to have him not do so as

long as he did not attempt to exercise his rights of visitation.

We are urged to permit this adoption absent the natural father's consent because of the desire on the part of the natural mother and her present husband to make a home for the child. We are likewise told that the present husband has in effect been the father to the child, and we, of course, applaud such action. Too often children of a second marriage are not afforded that benefit. But we would further point out, as we did in *Goodman v. Goodman*, 180 Neb. 83, 89, 141 N.W.2d 445, 449 (1966), that "[c]hildren are not chattels," and title to children is not necessary in order for one to provide a child with a good home. All that the Zerbs are doing for the child is commendable, and we would be hopeful that they would continue to do so. But they do not need either absolute title or the removal of the natural father in order to do so. The natural father continues to have rights which ought not to be severed unless required by law. As we noted in *In re Adoption of Simonton*, 211 Neb. 777, 320 N.W.2d 449 (1982), the ties of a natural parent are not to be treated lightly. Hopefully, the parties to this action can now set aside their feelings for each other and put the best interests of the child ahead of their own desires. Through proper encouragement by the Zerbs, this child can have the best of all worlds.

For these reasons, therefore, we believe that the judgment of the county court in finding that the natural father had not abandoned the child was correct, and the judgment of the district court approving the action of the county court is affirmed.

AFFIRMED.