IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE ADOPTION OF EVA S. & ELIJAH S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE ADOPTION OF EVA S. AND ELIJAH S., MINOR CHILDREN.

SAMANTHA G. AND CHAD G., APPELLANTS,
V.
GABRIEL S., APPELLEE.

Filed December 2, 2014.    No. A-14-244.

Appeal from the County Court for Lancaster County: LAURIE YARDLEY, Judge. Reversed and remanded with directions.

Kelly N. Tollefsen, of Kelly Tollefsen Law Offices, P.C., L.L.O., for appellants.

No appearance for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

Samantha G. and Chad G. appeal from an order of the county court for Lancaster County finding that Chad, as a stepparent, could not adopt Samantha's children. The trial court found that Samantha and Chad failed to show that Gabriel S., the children's biological father, had abandoned the children and that therefore, alternative consent for adoption could not be given by the children's guardian ad litem (GAL). Based on the reasons that follow, we reverse, and remand with directions.

## BACKGROUND

Samantha and Gabriel are the biological parents of Elijah S., born in April 2008, and Eva S., born in July 2009. The children were born out of wedlock. Chad is Samantha's husband, who seeks to adopt Elijah and Eva.

On November 7, 2012, Samantha and Chad filed a petition in the county court for Lancaster County for the adoption of Elijah and Eva by Chad. The petition alleged that Gabriel had abandoned the minor children in that he had not had contact with the minor children for 6 months preceding the filing of the adoption petition. The court appointed Stefanie Flodman as the GAL to investigate the issue of abandonment and prepare a report for the court.

A trial on the matter was subsequently held in January 2014. The evidence showed that an order of paternity and support was entered on May 5, 2009, naming Gabriel as the father of the minor children. Gabriel did not show up for the hearing on that matter. He was ordered to pay $328 per month in child support. Gabriel has not paid child support since January 2012. He made payments in December 2011 and January 2012 of nearly $6,000 and became current on his child support at that time. No further payments have been made since then.

Gabriel was incarcerated from July 30, 2009, to March 1, 2010, for felony possession with intent to deliver a controlled substance. Gabriel was again incarcerated from April 21 to September 1, 2011, for possession with intent to deliver cocaine.

In November 2011, 2 months after his release from incarceration, Gabriel filed a complaint to modify the court's order of paternity and support, requesting parenting time. A temporary order was entered on May 18, 2012, providing Gabriel with limited supervised parenting time with the minor children. Gabriel knew of the court order allowing parenting time, but did not exercise any of his parenting time during the existence of the temporary order. Gabriel further testified that he understood that the temporary order required him to work with Samantha to arrange parenting time and to designate a supervisor, but he failed to contact her. Gabriel claimed that there were three people approved to supervise his visits and that they either were unwilling to supervise or were unavailable. Stephanie testified that Gabriel never contacted her about making arrangements for visitation and that she did not do anything to prevent the visits from taking place. Two months passed after Gabriel was granted visitation, and no visitation took place. Gabriel was also arrested on two separate occasions after the temporary order was entered. A final hearing on visitation was scheduled in July 2012. Gabriel failed to appear at the hearing and was not incarcerated at that time.

Gabriel was again incarcerated from August 27, 2012, to December 6, 2013, for possession and theft of stolen property. Between the time he was released on December 6 until the time of trial in this case, he had not provided any financial support to the children, nor had he made any contact with Samantha to see the minor children.

Gabriel admitted at trial that he had not had contact with the minor children for over 2½ years. He had not provided financial support for the children since January 2012. Gabriel had not sent any correspondence to the minor children, including any Christmas gifts or birthday cards, for 2½ years prior to trial.

Gabriel denied knowing where Samantha lived, but he was aware of Samantha's father's address. He did not attempt to send any support or correspondence to the children through Samantha's father. Gabriel testified that he sent correspondence to Samantha's father on one occasion in May or June 2013, while incarcerated, in which he inquired about visitation.

Samantha testified that Gabriel has known how to contact her for years. She testified that her address has not changed in the last 2½ years before trial and that Gabriel had driven by her

residence on more than one occasion. She testified that Gabriel had not contacted her in the last 2 years.

Flodman, the GAL, found that although Gabriel "had made efforts with the courts to seek parenting time with the children in 2011, it does not appear that he followed through with the efforts to see his children." Flodman found that the children had not seen their father in nearly 3 years and do not know him. She found that "[a]lthough [Gabriel] desires to be a part of his children's lives he has not put himself in a position to be physically present." She concluded that Gabriel had abandoned the children and that alternative consent should be allowed.

Following trial, the trial court found that alternative consent for adoption could not be given by the GAL based on the following reasoning:

> The court does not find that the evidence in this case has shown that [Gabriel] has acted toward his children in a manner evidencing a settled purpose to be rid of all parental obligations. This is shown by his filing for parenting time as well as making child supports payments. Clearly the evidence has shown that [Gabriel's] efforts have been few and far between and by committing law violations resulting in his incarceration, he has put himself in a situation where his children do not even know him. However the court is not making a finding as to best interest of the children, but only that the evidence does not support the finding of abandonment by the natural father Gabriel . . . . Therefore the court finds that alternative consent may not be given by the [GAL].

## ASSIGNMENTS OF ERROR

Samantha and Chad assign that the county court erred in (1) failing to find that Gabriel abandoned Eva and Elijah, (2) failing to find that Gabriel acted toward his children in a manner evidencing a settled purpose to be rid of parental obligations, and (3) failing to find that alternative consent to the adoption could not be given by the GAL.

## STANDARD OF REVIEW

Appeals in adoption proceedings are reviewed by an appellate court for error appearing on the record. *Jeremiah J. v. Dakota D.*, 287 Neb. 617, 843 N.W.2d 820 (2014). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

Samantha and Chad's three assignments of error challenge the trial court's finding that Gabriel did not abandon Elijah and Eva and that therefore, the GAL could not give alternative consent to allow Chad to adopt the children.

Neb. Rev. Stat. § 43-104 (Reissue 2008) provides: "(2) Consent shall not be required of any parent who . . . (b) has abandoned the child for at least six months next preceding the filing of the adoption petition . . . ." The critical period of time during which abandonment must be shown to eliminate the necessity for obtaining consent to adoption from a parent under this section is the 6 months immediately preceding the filing of the petition for adoption. *In re Guardianship of T.C.W.*, 235 Neb. 716, 457 N.W.2d 282 (1990).

Although § 43-104 specifies the 6 months preceding the filing of the petition as the critical period of time during which abandonment must be shown, the Nebraska Supreme Court has stated that this statutory period need not be considered in a vacuum. See *In re Adoption of Simonton*, 211 Neb. 777, 320 N.W.2d 449 (1982). "One may consider the evidence of a parent's conduct, either before or after the statutory period, for this evidence is relevant to a determination of whether the purpose and intent of that parent was to abandon his child or children." *Id*. at 783, 320 N.W.2d at 453.

To prove abandonment in adoption proceedings, the evidence must clearly and convincingly show that the parent has acted in a manner evidencing a settled purpose to be rid of all parental obligations and to forgo all parental rights, together with a complete repudiation of parenthood and an abandonment of parental rights and responsibilities. See *In re Adoption of Simonton, supra*.

The question of abandonment is largely one of intent to be determined in each case from all the fact and circumstances. *In re Adoption of David C.*, 280 Neb. 719, 790 N.W.2d 205 (2010).

As stated above, the critical period of time during which abandonment must be shown to eliminate the necessity for obtaining consent to adoption from a parent is the 6 months immediately preceding the filing of the petition for adoption. See *In re Guardianship of T.C.W., supra*. In the present case, the petition for adoption was filed on November 7, 2012, and in the 6 months prior to that date, Gabriel had no contact or correspondence with the children and had not paid any child support. Thus, the evidence supports a conclusion that Gabriel abandoned his children in the 6 months preceding the filing of the petition for adoption.

In concluding that Gabriel had not abandoned his children, the trial court relied on events that occurred outside of the statutory 6-month period, specifically the fact that Gabriel had filed for parenting time and made child support payments. As previously noted, evidence of a parent's conduct before and after the statutory 6-month period is also relevant to determine whether the purpose or intent of the parent was to abandon the children. See *In re Adoption of Simonton, supra*.

Gabriel filed for parenting time in November 2011, 1 year before the petition for adoption was filed. However, after Gabriel was granted temporary supervised visits in May 2012, he never exercised any of the visitation he was awarded. He did not contact Samantha despite his understanding that the temporary order required him to work with Samantha to arrange parenting time and to designate a supervisor. He was arrested twice after the temporary order was entered. He did not appear at the final hearing on his visitation in July 2012 and was not incarcerated at that time. He never exercised any visitation at any time after the final hearing. The evidence shows that even after being granted visitation, Gabriel made choices that were inconsistent with any intent to parent the children.

In regard to child support, Gabriel made large payments of child support in December 2011 and January 2012, making him current on his support obligations at that time. Again, this was more than 6 months before the petition for adoption was filed. Gabriel has not made any child support payments since then.

The evidence in regard to Gabriel's conduct before and after the statutory period also shows that Gabriel has not seen and has not had any contact with the children for 2½ years prior

to trial in this matter. Further, Gabriel has not sent any correspondence to his children, including birthday cards or Christmas gifts, for at least 2½ years before trial. He has not provided any financial support for his children since January 2012. He has been incarcerated at various times, limiting his access to his children. Even when he was not incarcerated, however, he has not corresponded with or had contact with the children. His own actions and decisions have prevented him from parenting his children.

Flodman found that although Gabriel had sought parenting time with the children in 2011, he did not follow through with the efforts to see his children. Flodman determined that the children had not seen Gabriel in nearly 3 years and do not know him. She found that although Gabriel has a desire to be a part of his children's lives, "he has not put himself in a position to be physically present." She concluded that Gabriel had abandoned the children and that alternative consent should be allowed.

Gabriel's lack of contact and support over the 2½ years before trial shows an intent to be relieved of parental duties. The record shows not a mere inadequacy, but a total parental absence toward the two children. Although Gabriel did file for visitation at one time and made one effort to bring his child support current many months ago, the totality of the circumstances demonstrates that these efforts were de minimis in comparison, and do not overcome the remaining overwhelming evidence of his intent to abandon his children. Where there has been a protracted period of totally unjustified failure to exercise parental functions, an isolated contact or expression of interest does not necessarily negate the inference that a person no longer wishes to act in the role of parent to a child. *In re Adoption of Simonton*, 211 Neb. 777, 320 N.W.2d 449 (1982). The parental obligation "requires continuing interest in the child and a genuine effort to maintain communication and association with that child. Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child." *Id*. at 784, 320 N.W.2d at 454.

While the ties of a natural parent are not to be treated lightly in adoption proceedings, neither should noncustodial parents treat lightly their rights and responsibilities toward the minor children. *In re Guardianship of T.C.W.*, 235 Neb. 716, 457 N.W.2d 282 (1990). Gabriel has acted in a manner evidencing a settled purpose to be rid of all parental obligations and to forgo all parental rights. The evidence shows a complete repudiation of parenthood and an abandonment of parental rights and responsibilities. Therefore, we conclude that the trial court erred in finding that Gabriel had not abandoned Elijah and Eva and in concluding that the GAL could not give alternative consent for adoption.

## CONCLUSION

We conclude that the trial court erred in finding that Gabriel did not abandon his children and that alternative consent for adoption could not be given by the GAL. Accordingly, the judgment of the county court is reversed and the matter is remanded to the county court with directions to allow the GAL to execute consent so an adoption hearing can be held.

REVERSED AND REMANDED WITH DIRECTIONS.