457 N.W.2d 282 (1990)
235 Neb. 716
In re GUARDIANSHIP OF T.C.W., a Minor Child.
K.T. and J.T., Appellees,
v.
D.W., Appellant.
No. 89-1141.
Supreme Court of Nebraska.
July 6, 1990.
*283 Michael K. High, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., Lincoln, for appellant.
Victor Faesser, of Witte, Donahue & Faesser, P.C., Pawnee City, for appellees.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
WHITE, Justice.
On the petition of K.T. and J.T., the stepfather and natural mother of T.C.W., then age 5, the county court for Pawnee County entered an order which was filed January 26, 1989, appointing a guardian for T.C.W. and authorizing the guardian to sign a substitute consent for adoption pursuant to Neb.Rev.Stat. § 43-105 (Reissue 1988). The court found by clear and convincing evidence that D.W., the natural father, had acted
in a manner evidencing a settled purpose to be rid of parental obligations and to forego parental rights, together with a repudiation of parenthood and an abandonment of parental rights and responsibilities for a period of more than 18 months immediately preceding the filing of the adoption petition and the petition for appointment of a guardian.
D.W., who had objected to the appointment of a guardian in the county court, appealed to the district court, which affirmed the county court. From that order and judgment the father appeals to this court, his sole assignment of error being that there was insufficient evidence to support a finding of abandonment.
These proceedings were initiated for the ultimate purpose of the adoption by K.T. of his stepdaughter. Appeals in adoption proceedings are reviewed by the district court and this court for error appearing on the record. In re Adoption of *284 C.L.R. and J.M.R., 218 Neb. 319, 352 N.W.2d 916 (1984); Neb.Rev.Stat. § 25-2733 (Reissue 1989).
The marriage of J.T. and D.W. was dissolved April 9, 1986, by a decree of the circuit court of Warren County, Missouri. The mother was awarded custody of the couple's minor child born May 29, 1983. K.T. and the mother were married in Missouri on May 18, 1986, and on May 20 the family moved to Pawnee County, Nebraska.
The evidence is uncontroverted that from June 1986 through December 1987, D.W. had no contact whatsoever with his child. He did not attempt to visit her, to call her on the telephone, nor to send her any letters or gifts. He did not pay any child support during this time. He admitted that no one kept him from having contact with the child.
D.W., who was 27 years old at the time of the hearing, testified that when J.T. told him of the divorce, she also said that "maybe in a couple of years when you get your stuff together, get an apartment of your own, you'll be able to spend time with [T.C.W.]...." Although the divorce decree had granted him visitation of one Sunday per month, D.W. said that he set a goal of 2 years to try to rebuild his life so that he could carry on a productive relationship with his child.
From the last time he saw T.C.W. until February 1988, D.W. testified that, apparently for employment opportunities, he moved from Missouri to Sacramento, California, and then on to several different locations in the Boston, Massachusetts, area. He was living in Boston at the time of the hearing.
D.W.'s father contacted him in January 1988, informing him of the adoption proceedings. D.W. called J.T. in February to discuss the matter, but did not inquire about his daughter after talking to J.T. and K.T. for approximately 1 hour. On March 19 and 20, 1988, D.W. visited his daughter, and he testified that during the visit he established a father-to-daughter bond with her. Since then he has called his daughter several times and has sent her letters and gifts.
The appellant's brief cites In re Adoption of Simonton, 211 Neb. 777, 320 N.W.2d 449 (1982), and In re Guardianship of Sain, 217 Neb. 96, 348 N.W.2d 435 (1984), for authority in adoption cases where abandonment was the issue.
In Simonton, we reversed the county court's finding of abandonment where the father showed sporadic contact with his two minor children. In the syllabi of the court we held:
The critical period of time during which abandonment must be shown to eliminate the necessity of obtaining consent to adoption from a parent under the provisions of Neb.Rev.Stat. & sect; 43-104 (Reissue 1978) is the 6 months immediately preceding the filing of the petition for adoption. However, evidence of a parent's conduct either before or after this statutory period may be considered as relevant to a determination of whether the purpose and intent of that parent was to abandon the child or children.
....
... In an adoption proceeding, the ties of a natural parent are not to be treated lightly.
... To prove abandonment in adoption proceedings, the evidence must clearly and convincingly show that the parent has acted toward the child in a manner evidencing a settled purpose to be rid of all parental obligations and to forego all parental rights, together with a complete repudiation of parenthood and an abandonment of parental rights and responsibilities. Mere inadequacy is not the test.
In Sain, we affirmed the lower court's finding that the father had not abandoned his minor child. We said that the record showed that the father's ex-wife, who had custody of the child and had remarried, played an active role in preventing the father from exercising his rights of visitation.
No one prevented D.W. from seeing his daughter in this case, and there was not even sporadic contact during the statutory *285 period, nor for some 12 months prior to that. While the ties of a natural parent are not to be treated lightly in adoption proceedings, neither should noncustodial parents treat lightly their rights and responsibilities toward their minor children. Although a parent-child relationship was apparently rekindled by a visit after the adoption proceedings were initiated, this cannot justify a period of 18 months where not a flicker of interest was shown. We noted in Simonton:
Where there has been a protracted period of totally unjustified failure to exercise parental functions, an isolated contact or expression of interest does not necessarily negate the inference that a person no longer wishes to act in the role of parent to a child. Matter of Thomas F.L., 87 Misc.2d 744, 386 N.Y.S.2d 726 (1976).... Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child. Matter of Adoption of David C., 479 Pa. 1, 387 A.2d 804 (1978).
In re Adoption of Simonton, supra at 783-84, 320 N.W.2d at 454. The record shows not a mere inadequacy, but a total parental absence toward a minor child of a young and tender age.
The question of abandonment is largely one of intent to be determined in each case from all the facts and circumstances. In re Guardianship of Sain, supra. The county court heard the facts and circumstances in the hearing for appointment of a guardian to give substitute consent for adoption. Under our review for error on the record, we cannot say that the court's finding of abandonment was clearly wrong, nor do we find any other error warranting reversal.
The judgment of the district court, affirming the order of the county court, is therefore affirmed.
AFFIRMED.